(No. 6153.   January 18, 1935.)

MARY SCARBOROUGH, Administratrix of the Estate of CHARLES SCARBOROUGH, Deceased, Appellant, v. C. W. BEARDMORE, Employer, and UNITED STATES FIDELITY & GUARANTY COMPANY, Surety, Respondents.

[41 Pac. (2d) 290.]

J. Ward Arney, for Appellant.

C. A. Orndorff and Clifton Y. Creelman, for Respondents.

GIVENS, C. J.—Appellant was employed at the sawmill of the Beardmore Company, one of the respondents, as a millwright. About March 20th, he was lifting a steel shaft about nine and one-half feet long and two and seven-sixteenth inches in circumference (diameter) weighing about 150 to 175 pounds, used as a ram in straightening the rails of a car track inside the mill. As he reached down to lift this shaft up, his back gave out and he went down on his hands and knees.

He reported the incident the next morning and did not return to work and was sent to Dr. Lower for treatment and stayed in bed four or five days with hot compresses and applications on his back and taking medicine, up until April 2d. He was further examined by Dr. Windell and then consulted Dr. Geo. H. Anderson, where X-ray pictures were taken. The pain in his back increased and at the time of the hearing on his application for compensation he had become totally disabled.

The board awarded compensation which on appeal from the district court (*Scarborough v. Beardmore,* 52 Ida. 180, 12 Pac. (2d) 771) was reversed because of the insufficiency of the findings, the court saying:

"In short, the board found Scarborough was disabled on account of pain in the back, and that certain symptoms were aggravated, not that the disease itself was aggravated or that it caused pain in the back. The findings are not sufficient to sustain an award. The board must find specifically whether there was an accident and whether such accident was or was not the proximate cause of the injury, although the presence of a previous disease or weakened condition is immaterial. (*Hanson v. Independent School Dist. 11-J,* 50 Ida. 81, 294 Pac. 513.)"

■ Upon the second hearing without further evidence the commission made these additional findings:

"That the pain said Charles Scarborough felt in his back while lifting on said piece of steel shafting and which disabled him, and/or his disability for work therefrom were not the result of any accident or injury sustained by him on said first day of March, 1929, or at any other time or at all while in the employ of the defendant Charles W. Beardmore.

"That the osteoarthritis which said Charles Scarborough had in his back was not caused by, or exacerbated, aggravated or accelerated by any accident or injury sustained by him on said first day of March, 1929, or at any other time, or at all, while in the employ of the defendant, Charles W. Beardmore; that the only aggravation which was caused by the lifting was to the symptoms of osteoarthritis which said Charles Scarborough had."

and denied compensation, which the district court sustained, hence this appeal.

These additional findings are responsive to what was required by this court and are not inconsistent because the board formerly, as is more clearly and definitely now detailed, was evidently of the opinion that the symptoms of

osteoarthritis were aggravated but that the *condition itself* was not, and this court there held that the aggravation of the symptoms only was not sufficient to justify an award for compensation, and it is obvious that this is a case requiring expert medical testimony for its solution. (*Hartford Acc. & Indem. Co. v. Industrial Commission,* 38 Ariz. 307, 299 Pac. 1026.)

The testimony of the five doctors called, three by the claimant and two by the defense, and the deposition of the one doctor which was introduced for the defense were in substance as follows:

Dr. George H. Anderson, who testified for the claimant, did not personally examine the claimant but examined the X-ray pictures:

"I say that bone production can result from injury, but extensive involvement over a series of vertebrae such as this does not fit in with the injury as well as it does with arthritis. (ff. 211.)

"Assuming that he had some arthritis at the time of his injury at the Beardmore plant, the injury would in my opinion very likely aggravate that arthritis condition. (ff. 212.) . . . .

"I think a compression fracture would aggravate the symptoms produced by the arthritis and make the spine more susceptible to symptoms as the arthritis developed. (ff. 213.) . . . .

"From the reports I have read I would say Mr. Scarborough is totally disabled. I have not examined him. (ff. 220.) . . . .

"I thought the compression fracture was not the result of the accident on the 15th day preceding my examination. I thought the compression fracture was due to an old injury. (ff. 226.) . . . .

"The man's disability is due to the result of the compression fracture and the arthritic changes there. (ff. 228.) . . . .

"If at the time of this alleged accident, Mr. Scarborough had some arthritis and some compression fracture, such a lifting as he experienced at that time and strain could very easily tend to aggravate that condition to future disability and permanent disability, if prior to that time he had no disability whatsoever. (ff. 234.)"

Dr. J. T. Wood, who examined the claimant personally, testified for him to this effect:

"The interference with the urinary discharge would probably show, in the evidence of stricture that the bladder, the contractibility of the bladder muscle was impaired, so that the bladder was not able to properly empty itself, which would be due in the case of a spinal injury to a nerve injury. (ff. 242.)

"I spoke of Dr. George H. Anderson having found an area of hyperthesia and I later found an area of anaesthesia, that is the rule in all injuries involving the cord, the posterior nerve roots, either the cord or the posterior nerve roots, you are quite likely to get the hyperthesia or increased response to stimuli at first and later as the effects of the injury develop you are apt to get the destruction of the injured nerve tissues followed by anaesthesia or loss of sensation. (ff. 243.) . . . .

"I don't see any prospect of Mr. Scarborough getting much better or being able to work again. I don't know whether there is any treatment that would be of any particular assistance to him. I don't think there is any treatment that would do any good as far as compression fracture is concerned at this time. (ff. 250.) . . . .

· "This man having an industrial history of an accident back twenty years ago in New Mexico, where he fell from a flat car and laid off two days afterwards, and later a belt hit him in the face and on the feet in Montana, but he never quit work all the time and had no disability, but immediately after lifting this particular bar did have disability from then on, it would seem more probable that the

disability would be due to the last injury. (That is the one involved in this particular case.) (ff. 252.)

"Assuming that prior to that time he had some arthritis, some degree of it, I would say that the particular strain of lifting could aggravate or accelerate that condition to the point of disability. (ff. 253.)"

Dr. H. T. Anderson, who examined the claimant personally, testifies for the claimant to this effect:

"In my opinion he is now totally and permanently disabled from returning to any kind of manual labor. (And further agrees with Dr. Wood's answers and statements.) (ff. 267.) . . . .

"I would not state that this man's disability is due to the compression fracture nor conversely that it is attributable entirely to the arthritis. I am unable to distinguish in percentage the cause of his present disability. (ff. 270.) . . . .

"I don't think it is likely, over such a long period of time that a man could have performed hard work after his New Mexico accident, as this man has, without experiencing some intermediate pain and disability. (ff. 272.)"

Dr. R. A. Lower examined and treated the claimant; his deposition for the defense was to this effect:

"The pain was probably due to osteoarthritic changes at the site of the old compression fracture and I believe the pain and discomfort was enough to cause disability for work. (ff. 283.)

"If it should develop at this time that Mr. Scarborough is not physically able to perform work on account of the pain in his back I doubt that the disability would be due to an accident in March, 1929, although there is a possibility that slight injury to the site of the old lesion could cause considerable disability by lighting up the osteoarthritis. (ff. 284.) . . . .

"In my examination of the claimant I found a condition other than the claimed accident—namely the old compression fracture of the first and second lumbar vertebrae with

osteoarthritic changes, contributed to the pain and disability in the back and hips. (ff. 291.) "

Dr. A. O. Adams examined the claimant personally and testified for the defense in effect as follows:

"The cause of arthritis is not well understood. It is usually conceded to be either one of two things, or one of three things, either infection in the body that has been present over a considerable period of time, or some metabolic disturbance, that is, heavy work or exposure over a long period of time, that is, repeated acts of trauma. (ff. 302.) . . . .

"Assuming that Mr. Scarborough had never had a compression fracture at all, this condition of arthritis that I find in his spine today, I hardly think would enable him to perform manual labor. That is based also on other findings that you have in his body. I think he is totally disabled now as far as heavy manual work is concerned of the type he has been used to doing. He might do some light work if he were qualified to do it. (ff. 307.) . . . .

"I don't hardly think all of this present condition of Mr. Scarborough is due to arthritis. (ff. 309.)

"I account for the fact that this man had worked for 25 years at hard manual labor and was suddenly disabled and all crippled up with arthritis or something related to arthritis, in that a person who is developing a progressive arthritis has got to get to a point somewhere where they stop. And it is more likely probable than not that that point is generally when they sustain an industrial accident. (ff. 310.) "

Dr. J. H. O'Shea examined the claimant personally and testified for the defense to the following effect:

"Arthritis is ordinarily caused by infection. In this case I attribute it to infection from his mouth and teeth. I don't think that if Mr. Scarborough had had no arthritis that this compression fracture shown here would disable him to the extent he is now disabled. In my opinion his present

disability is due to his arthritis. And I don't believe that is dependent to any degree upon his compression fracture. I think this compression fracture occurred sometime before the 20th of March, 1929. My opinion in this respect is based upon the X-ray findings. I found other evidences of arthritis in his neck and shoulders and in his knees. You get this creaking on movement.

"Assuming that Mr. Scarborough had never had this compression fracture of the first and 2nd lumbar vertebrae, it would be difficult to say what his ability to perform manual labor today would be. I would say that sometime he would become totally disabled from his arthritis, just what date I couldn't say. I know he is totally disabled now and I think it is from the arthritis. (ff. 318–320.) . . . .

"Arthritis runs along in progressive stages, just increasing gradually and gradually and all, as Dr. Adams said, and some untoward event like a strain of this sort might transform a man from a daily laborer into a totally incapacitated man. It might be a trivial injury that might do it. I think his condition has increased markedly in the last two years. (ff. 322.)

"I don't think that the industrial accident that we have heard testified to here would aggravate the arthritis. I think it would aggravate the symptoms of the arthritic condition.

"I don't believe that this man who had been laboring along for twenty years was one day suddenly disabled. (ff. 323.)

"I account for that in that I believe as Dr. Lower said in his testimony the man felt a strain in his back and he worked for several days and the pain got worse.

"I presume that fact that he lifted a 150 to 175 pound weight would tend to support the conclusion that this strain might have aggravated or lighted up this condition, although I presume that he had been lifting the same weight day after day.

"The lifting of the weight day by day may be one thing, and the same lift at one day might strain the man and produce disability, but not very often.

"I don't think it would depend on the position the spine is in. I don't think under any circumstances you could conclude that he could get a compression fracture. (ff. 324, 325.)"

The different doctors testified as follows to questions by a member of the board:

"Mr. Suppiger: What importance do you attach to the fact that you found anaesthesia and Dr. Adams found normal, Dr. Wood?

"Dr. Wood: Well, I think the whole case hinges a great deal on that very point as to whether or not there is any cord or nerve injury or not, and the point is that if Dr. Anderson found hyperthesia in 1929, and in April, 1931, Dr. Harold T. Anderson and myself found anaesthesia, it makes it practically conclusive that there is a definite nerve injury on the lumbar cord.

"Mr. Suppiger: Dr. Adams, what importance did you attach to that?

"Dr. Adams: I didn't attach very much importance to it in this particular case because the man's present disability is not based upon cord lesion.

"Mr. Suppiger: And Dr. O'Shea, what importance did you attach to that?

"Dr. O'Shea: I feel the same as Dr. Adams, that his present disability is dependent upon the symptoms of the arthritis and not upon the cord lesion, and the condition could not be such of anaesthesia because we all report the same findings as to heat and cold, both Dr. Wood, Dr. Anderson and Dr. Adams and myself.

"Mr. Suppiger: Dr. Adams, are you sure examination by you three doctors would not result in agreement as to the condition now existing?

"Dr. Adams: It would depend upon the co-operation of the patient, the response to the stimuli.

"Mr. Suppiger: You know of no tests which would preclude the possibility of malingering?

"Dr. Adams: Reflexes cannot be controlled by the patient.

"Mr. Suppiger: You do know of tests, then, that would prevent malingering by him and it wouldn't make any difference what co-operation you received?

"Dr. Adams: Yes.

"Mr. Suppiger: Are you of that opinion?

"Dr. O'Shea: Yes.

"Mr. Suppiger: Are you of that opinion?

"Dr. Adams: The deep reflexes cannot be controlled by the patient.

"Dr. Wood: No he cannot control the deep reflexes.

"Mr. Suppiger: And in view of that statement by all three of you, are you of the opinion that you could arrive at the same conclusion as to the deep reflexes?

"Dr. Wood: Yes.

"Dr. Adams: Yes.

"Dr. O'Shea: Yes.

"Dr. Wood: We all report the deep reflexes exaggerated. We all agree on that here.

"Mr. Suppiger: You agree on that?

"Dr. Adams: Yes.

"Mr. Suppiger: No further examination would help you?

"Dr. O'Shea: They are equal and slightly increased.

"Mr. Suppiger: You agree with that, Dr. Wood?

"Dr. Wood: Yes.

"Mr. Suppiger: And you agree with that, Dr. Adams?

"Dr. Adams: Yes. I might say I don't agree as to the cause of it."

■ It cannot be said that the above testimony does not disclose substantial though conflicting evidence supporting the findings of the commission. (*Mell v. Larson*, 54 Ida. 754, 36 Pac. (2d) 250.) Hence, the same may not be disturbed by the court. (I. C. A., sec. 43–1408; Honnold on Workmen's Compensation, pp. 821–826; Schneider's Workmen's Compensation, p. 1998; C. J., Pamphlet on

Workmen's Compensation, p. 122, sec. 127; *McNeil* v. *Panhandle Lumber Co.,* 34 Ida. 773, 203 Pac. 1068; *Butler v. Anaconda Copper Min. Co.,* 46 Ida. 326, 268 Pac. 6; *Burchett v. Anaconda Copper Min. Co.;* 48 Ida. 524, 283 Pac. 515; *Delich v. Lafferty Shingle Mill Co.,* 49 Ida. 552, 290 Pac. 204; *Croy v. McFarland-Brown Lumber Co.,* 51 Ida. 32, 1 Pac. (2d) 189; *Strouse v. Hercules Min. Co.,* 51 Ida. 7, 1 Pac. (2d) 203; *Ramsay v. Sullivan Min. Co.,* 51 Ida. 366, 6 Pac. (2d) 856; *Dunnigan v. Shields,* 52 Ida. 195, 12 Pac. (2d) 773.)

In *In re Larson,* 48 Ida. 136, 279 Pac. 1087, there was a specific breaking of the aorta; and in *McNeil v. Panhandle Lumber Co., supra,* total loss of sight in the right eye was caused by detachment of the retina; in *Hanson v. Independent School Dist. 11–J,* 50 Ida. 81, 294 Pac. 513, there was a ruptured appendix; thus these and similar holdings are readily distinguishable.

Judgment affirmed; no costs allowed.

Budge, J., and Koelsch, D. J., concur.

Morgan and Holden, JJ., dissent.

Petition for rehearing denied.