(No. 6212. May 20, 1935.)

GLEN STODDARD, Respondent, v. MASON'S BLUE LINK STORES, INC., Respondent, and STATE INSURANCE FUND, Appellant.

[45 Pac. (2d) 597.]

P. C. O'Malley and C. W. Poole, for Appellant.

Lewis A. Lee and. W. Lloyd Adams, for Respondent Glen Stoddard.

BUDGE, J.—From a judgment of the district court, reversing an award in favor of Mason's Blue Link Stores, Inc., employer, and its surety, State Insurance Fund, and directing an award in favor of the claimant Glen Stoddard, this appeal is prosecuted.

The record discloses, in substance, the following: Claimant on or about April 13, 1933, as a part of his regular duties as a clerk for his employer, Mason's Blue Link Stores, Inc., which company carried on a general store business, while carrying a case of oranges and lemons down a flight of stairs missed the last step, stumbled and felt a sharp pain in, and became sick to, his stomach. After a short rest the pain eased somewhat. Claimant continued work that and the following days, although he did not feel as well as usual. On Saturday, April 15th, while hanging a bunch of bananas claimant became nauseated and sick to his stomach and secured the assistance of another clerk to hang the bananas and then went down in the basement and vomited. Although not feeling well claimant continued at work throughout the remainder of that day. Near midnight Saturday, or early Sunday morning, after retiring, claimant felt a sharp pain in the region of his stomach which progressed in severity and about 6 o'clock Sunday morning he visited the office of a physician and surgeon where he remained the day, during which time he vomited several times and was given opiates to relieve the pain. About 6 P. M. of that day he was taken to the home of his grandfather where at about 9:30 or 10 P. M. the physician visited him and found him in shock and violently sick. Claimant was immediately hospitalized and about 1 A. M. Monday morning was operated on and found to be suffering with mesentery hernia, the condition that presented itself being a considerable quantity of distended and discolored intestines, at least two feet of which had gone through a perforation in the mesentery. The bowel was removed from the perforation and placed in position and claimant made a normal recovery.

Upon claimant's application for compensation the Industrial Accident Board made findings of fact substantially in accordance with the foregoing recital, and further found in finding number VI as follows:

"That the condition from which claimant was found to be suffering and the operation performed upon him on the

17th day of April, 1933, was the result of a mesentery hernia; that said hernia had existed to some degree prior to the 13th day of April, 1933, and was not the result of a personal injury by accident arising out of and in the course of claimant's employment with the defendant, Mason's Blue Link Stores, Inc.''

The board denied claimant compensation. On appeal the district court determined that all the findings of the board, with the exception of finding number VI, above quoted, were substantially correct and supported by competent evidence and adopted them as the findings of the court, but concluded that finding number VI was not supported by the evidence and was erroneous and reversed the decision of the board in this respect, awarding compensation to claimant.

■■ All of appellant's assignments of error are fundamentally based upon the proposition that the court erred in vacating and setting aside the board's finding number VI and in concluding that the hernia appeared suddenly and immediately following the accident of April 13, 1933, and did not exist in any degree prior thereto, and that said hernia resulted directly from and was caused by such accident while claimant was in the performance of the duties of his employment. With reference to the court's action in vacating and setting aside the board's finding number VI for the reason the same was erroneous and not supported by the evidence, the applicable rule appears to be that announced in *Fields v. Buffalo Idaho Min. Co., ante,* p. 212, 40 Pac. (2d) 114, namely: That it is within the province of the court to set aside findings unsupported by competent and substantial evidence and, if the evidence does not support a finding or findings a question of law is presented for determination by the courts. Appellant's theory is that the rent, tear, perforation or rupture in the mesentery in and of itself constituted a hernia, and that under I. C. A., sec. 43–1116, unless the proof discloses that the aperture in the mesentery occurred or made its first appearance at the time of and as a result of the accident, respondent suf-

fered no compensable injury, even though the proof conclusively shows that the protrusion of the bowel or intestines through the aperture or perforation resulted directly from the accident and did not exist in any degree prior thereto.

The statute, I. C. A., sec. 43–1116, with relation to compensation for hernia, provides:

"In all cases of hernia resulting from injury by accident alleged to have been sustained in the course of and resulting from employee's employment, it must be proved:

"1. That it was an injury by accident resulting in hernia.

"2. That the hernia appeared suddenly and immediately following the accident.

"3. That the hernia did not exist in any degree prior to the injury by accident for which compensation is claimed.

"4. That the hernia was reported to the employer within thirty days after the accident."

The testimony of the medical witnesses for claimant and appellant and their opinions deduced from the facts and circumstances are singularly in accord. Upon the question of when the perforation in the mesentery occurred, Dr. Cline, appellant's witness, was of the opinion it was congenital or had existed for a long period of time prior to the accident. Claimant's medical authorities, while stating their opinion that the perforation occurred at the time of, and was caused by, the accident related, also testified that the perforation or aperture may have existed for some time or may have been congenital, and that there was nothing to indicate how long it had existed. The record is not in conflict, however, as to the time of the occurrence of the protrusion or strangulation and its cause. The medical experts are in accord that strangulation, penetration or protrusion was originally caused by, and resulted from, claimant's fall on April 13th, and was further accelerated at the time the bananas were being lifted for hanging on April 15th, and, that strangulation or protrusion did not exist in any degree prior thereto. Dr. Rich, witness for claimant, testified:

"Any portion of the bowel protruding through there would immediately give symptoms of pain and distress. The bowel cannot remain in there any length of time without giving serious symptoms, any portion of the bowel cannot remain in there without giving serious symptoms."

"I would estimate from my experience with discolored bowel over the time I have observed them, that the longest that any portion of that bowel would (have been) through there would not be over forty-eight hours."

Dr. Rigby was of the opinion that strangulation had existed in the intestines not more than from twelve to twenty hours. During the course of the testimony it is quite apparent that the word "hernia" was more or less indiscriminately used. However, it is apparent that the doctors made a distinction between "hernial opening," "perforation" and like terms and "penetration," "protrusion," "strangulation" and similar terms. Dr. C. M. Cline, appellant's medical witness, testified that a congenital condition, an anomalous or defective structure (a perforation or aperture), was not only possible, but could and did at times exist until senility, without becoming acute, and then gave the following testimony:

"Q. Could this hernia have occurred from that incident that happened when he was carrying that box into the cellar, that is, *the original hernia or opening or the penetration of the mesentery?*

"A. My opinion is that the strangulation might be the end result of some such accident, but not the hernia."

"A. Naturally you have to have a hernia (perforation) *before the bowel can come down* to be strangulated."

After stating that a perforation may exist from birth or for a long period and only be brought to the attention of the patient when a loop of the intestine goes through the perforation, the following testimony was adduced from Doctor Cline:

"Q. And until the gut goes through there is no hernia, is there?

"A. Absolutely, because you have a defect in the structure itself.

"Q. Yes, but no hernia?

"A. *It is simply a perforation; it is not a hernia.*

"Q. Yes.

"A. It is labeled, it is called internal hernia."

"Q. Then either the occurrence on the thirteenth or on the fifteenth in your opinion would be sufficient to start the intestine through that opening, which later resulted in strangulation of the bowel?

"A. From the history of the case, Judge, I would assume that some of the bowel went through on the thirteenth, not sufficient to produce a strangulation, but it was a gradual process. It was a partial obstruction of slight degree at the start, and went on and eventually almost reached a permanent strangulation, and the boy became very ill and was rushed to the hospital for surgery.

"Q. Now, the symptoms at the time, that he felt sick at his stomach and the next day some vomiting—

"A. Exactly. It would fit in with just that sort of case."

From this evidence the correctness of the trial court's conclusion contrary to that of the board depends upon the meaning of the word "hernia," and, likewise the question of whether the hernia existed in any degree prior to the injury or appeared suddenly and immediately following the accident, depends upon the question: What is a hernia? In his testimony Dr. Cline gave the following definition:

"We have these abnormal openings in the mesentery, as was brought up there, that could hardly be classified as a hernia. *A hernia meaning the protrusion of* (in particular the abdomen) *of abdominal contents through some weakened portion of the abdominal wall. . . . .* "

 In all the definitions of "hernia" that have been called to the attention of the court or which have been found "hernia" is described as being the *protrusion* of some organ or some tissue from its normal situation through an accidental or natural opening in the walls of the cavity within which it is contained. In no instance does it appear

that the perforation or aperture, either natural or accidental, and without protrusion of some organ or tissue is defined as a "hernia."

"A HERNIA is a rupture. It is a protrusion of an organ or part of some tissue, which has escaped from its normal situation and projects through a natural or accidental opening in the walls of the cavity within which it is contained." Legal Anatomy and Surgery, Maloy, p. 571.

"The protrusion of a loop or knuckle of an organ or tissue through an abnormal opening (Celsus) . . . . *mesenteric h.* the passage of a portion of the gut through an opening in the mesentery." The American Illustrated Medical Dictionary, Dorlan, 16th ed., p. 578.

"*Hernia. Pathol.* Protrusion of an internal organ in whole or in part from its normal position; rupture; as *hernia* of the brain, lungs or intestines. . . . ." Funk & Wagnalls New Standard Dictionary. *Hernia.*

"*Med.* A protrusion consisting of an organ or part projecting through some natural or accidental opening in the walls of its natural cavity; as, *hernia* of the brain, of the lung, or of the bowels." Webster's New International Dic. (*Hernia.*)

From the authorities it appears that the conclusion must be reached that a hernia is the protrusion of some organ or tissue from its normal situation through an accidental or natural opening in the wall of the cavity in which it is contained, and, that the mere presence of a perforation or an aperture in the cavity wall, either accidental or natural, and through which some organ or tissue may protrude at a later time, is not a hernia within the meaning of I. C. A., sec. 43–1116. It follows therefrom that the determination of the trial court in this regard was correct.

█ █ It is urged that even though an accident was proven it is uncertain as to when and where the accident happened. If the accident is one whose happening cannot be fixed as of a specific date, it is sufficient to establish such time with reasonable probability. (*McNeil v. Panhandle Lumber Co.,* 34 Ida. 773, 203 Pac. 1068.) The evidence is

clear and satisfactory, and without conflict, that the hernia had its first appearance on the 13th at the time claimant stumbled and fell while carrying the box of oranges and lemons for his employer, and eventually, within three days thereafter, had almost reached a permanent strangulation, resulting in the operation, appellant's own medical witness giving the foregoing as his opinion.

■ Any question with relation to the giving of notice to the employer appears to be of no moment, the evidence showing that the employer had knowledge of claimant's injury within the time the giving of statutory notice was required. (*Cooper v. Independent Transfer & Storage Co.,* 52 Ida. 747, 19 Pac. (2d) 1057; *Crowley v. Idaho Industrial Training School,* 53 Ida. 606, 26 Pac. (2d) 180.)

■ It is urged that the court is without power to award judgment for costs on appeal from an order of the Industrial Accident Board, unless the court determines that the proceeding was prosecuted or the defense made without reasonable ground. Such a contention has been heretofore otherwise determined by this court, namely, to the effect that I. C. A., sec. 43–1411, was not intended to supersede the general provisions for taxing costs, and, that I. C. A., sec. 43–1411 "contemplates that if a court should determine that a proceeding was 'defended without reasonable ground,' it could tax costs against the party *not taxable otherwise,* as the 'whole cost' of the proceeding." (*Brady v. Place,* 41 Ida. 747, 242 Pac. 314, 243 Pac. 654.)

The judgment of the district court is affirmed and the cause remanded to said court, with instructions to remand the case to the Industrial Accident Board, with instructions to enter up an award in favor of claimant. Costs awarded to claimant.

Morgan, Holden and Ailshie, JJ., concur.