(No. 6516.   July 20, 1938.)

HOWARD C. CHAMBERS, Appellant, v. STATE OF IDAHO, on Relation of HARRY C. PARSONS, State Auditor, and FEDERAL MINING & SMELTING COMPANY, a Corporation, Respondents.

[81 Pac. (2d) 748.]

Robert E. Brown and Eugene S. Ware, for Appellant.

C. W. Beale, for Respondent, Federal Mining & Smelting Company.

J. W. Taylor, Attorney General, and R. W. Beckwith, Assistant Attorney General, for State ex rel. Parsons, Respondent.

HOLDEN, C. J.—Howard C. Chambers, claimant, past 62 years of age, is a farmer, and resided on, and owned, a 90-acre farm in Missouri. He had four children living with him (the wife and mother being deceased) 17, 18, 20, and 22 years of age, respectively. The father being rather advanced in years and in poor health, Andrew H. Chambers, the oldest son, performed all the farm work. In February, 1936, Andrew went to San Francisco, apparently to seek employment. Claimant then rented the farm (which was mortgaged for $1,650) for $400 per year. Andrew was in San Francisco several months but was employed only for about sixty days. From San Francisco, he went to Wallace, Idaho, some time in the latter part of July, 1936. Later, and in the latter part of September, Andrew went to Mullan, Idaho, where he was employed by the Federal Mining & Smelting Company as a mucker in the Morning Mine. January 7, 1937, Andrew, while so employed, and "while bringing his carbide lamp to help spit several fuses, took his carbide lamp from his hat and was carrying it in his hand and while walking in a stooping position hit his head on a timber cap, causing him to stumble and fall, head first, into a timber slide where he struck a trap-door, head first, four floors below, resulting in a fractured skull, from which said injury he died while being taken from the place of the accident" to a hospital for medical attention.

February 6, 1937, the father filed with the Industrial Accident Board a claim for compensation as a dependent of the deceased. The claim so filed is signed by only the father. No claim was filed by the surviving brother and sisters, as minors, either by their father as natural guardian, or otherwise. Therefore, it will not be necessary to discuss the contention of the mining company that the brother and sisters were not dependents.

April 8, 1937, the State of Idaho, on the relation of Harry C. Parsons, State Auditor, filed its claim with the board, against the employer and surety, for the sum of $1,000, under subdivision 6, section 43–1101, I. C. A., as amended by chapter 147, 1935 Session Laws.

July 26, 1937, a hearing was had before the board. August 20, 1937, it found and, accordingly, entered an order that claimant, Howard Chambers, was not entitled to an award as a dependent of the deceased. The board further found that the state was entitled to an award in the sum of $1,000 under sec. 43–1101, *supra*, as amended as aforesaid, against the Federal Mining & Smelting Company, as employer and self-insurer, and, accordingly, entered an order that such company pay said sum to the treasurer of the State of Idaho, to be deposited in the Industrial Administration Fund.

September 18, 1937, claimant Chambers appealed to this court from the order of the board denying him compensation as a dependent of his son, Andrew, as well as from the order of the board awarding the state the said sum of $1,000.

It is contended by appellant there is not "competent and substantial evidence to support the Findings upon which the award in this case was made." On that question, the record shows that for a period of about five years before the deceased went to San Francisco, he performed all the work on the farm; that for about the same period, claimant was not able to work "to amount to anything"; that the farm was mortgaged for $1,650; that the average rental was $400 per year and that that did not take the taxes into consideration; that before the deceased left for San Francisco, he told his father that after he got work he would send him some money "to help him along"; that the deceased was about 22 years of age when he went to California; that he was a single man; that the deceased and his father wrote "letters back and forth"; that at Mullan, Idaho, the deceased asked a sister to help him manage so he could send his father more money, and that "it was very, very necessary"; that while working in the Morning Mine, the deceased sent his father, at different times, sums totaling $60, and while working at San Francisco, he sent his father, at different times, a total of $40.

The only testimony produced at the hearing to defeat the claim of dependency was that of an assistant timekeeper. He testified: That at the time deceased went to work in the mine, he signed what is called an "Identification Card"; that at the time the card was signed, he asked deceased if he had any dependents and deceased "said he had no dependents"; that

"Q. You asked him (deceased) in case of accident who to notify?

"A. Yes.

"Q. Who did he say?

"A. It states there (referring to the identification card) Howard Chambers, father."

The identification card shows:

"Q. Have you any dependent or dependents?———. (There is a lead pencil check mark on blank line.)

"Q. Does the relationship of dependency exist between you and any other person or persons?———. (There is no lead pencil check mark on that line.)"

In addition to these questions; there are other questions printed on the identification card inquiring as to whether the deceased was single, married, widowed, or divorced; if married, whether separated or divorced; "if separated or divorced and have children under 18, do you contribute to the children's support, and if so, how much a month?" Then follows the above-quoted inquiries as to whether he had a dependent, or dependents, and as to whether the relationship of dependency existed between him and any other person or persons.

It will be observed that the inquiries leading up to those about dependency were directed to the question as to whether the deceased had children or a divorced wife, and, if so, how much a month he was contributing for their support. So it may well be the deceased understood, having no children depending on him for support, and not having a divorced wife, that he had no dependent or dependents. Remembering that the deceased had been making remittances to his father, it is reasonably certain had he been pointedly asked about that, and his father's need of such remittances, the true facts of the matter would have been developed.

A comparison shows that the pertinent facts in the case at bar are substantially like those in *Miller v. G. L. Arnett & Son,* 58 Ida. 420, 74 Pac. (2d) 177. In this case, Howard Chambers, the father, like the Millers, is dependent on the income of his farm; the farm is mortgaged for $1,650; in the Miller case, there was an unpaid balance on the purchase contract amounting to $800; in this case, the son of the claimant worked on the farm for several years prior to his death; in the Miller case, the son also worked several years on his father's farm prior to his death; in this case, the father has three children living with him who might, and probably do, render some assistance; in the Miller case, two sons, 22 and 24 years of age, respectively, rendered assistance to their parents; in this case, the deceased son from time to time made remittances to his father, and in the Miller case, the deceased son from time to time also made contributions to his father and mother.

Tested by the rule announced in the Miller case, *supra,* it is clear that, within the meaning of sec. 43–1102, I. C. A., appellant was a dependent of his son, Andrew H. Chambers, at the time of Andrew's death by accident.

The depositions of Henry and Elizabeth Chambers were taken at Joplin, Missouri. It is urged that they "were not sworn as witnesses or their depositions taken and certified, as required by the provisions of Sections 16–911, 16–912 and 16–913 of Idaho Code Annotated." The record shows: "Mr. Henry Chambers, of lawful age, being produced, sworn and examined on the part of the claimants, deposeth and saith as follows: . . . ." The record further shows that it was stipulated by counsel for the respective parties that "These depositions may be taken before W. A. Seiler, Notary, and by him be reported in shorthand and afterwards transcribed, and signed by the witnesses"; that such stipulation was fully complied with; that the shorthand notes were extended and the witness then signed and the notary, Seiler, affixed his seal to the deposition; that identically the same procedure was followed in the taking of the deposition of Elizabeth Chambers.

The notary, W. A. Seiler, certified: That deponents were sworn by him "to testify the whole truth of their knowledge touching the matter in controversy aforesaid; that they were examined, their examination reported in shorthand by me on the day, between the hours and at the place in that behalf hereinbefore stated (stating the time and place and hours), and afterwards by me transcribed on the typewriter"; that the depositions "were by said witnesses (the Chambers) subscribed and sworn to before me." And the record further shows that counsel for the adverse party attended. It therefore appears that there was no important deviation from any requirement of the statute. Sec. 16–923, I. C. A., provides:

"*Irregularities not fatal.*—An unimportant deviation from any direction relative to taking depositions shall not cause any deposition to be excluded where no substantial prejudice would be done to the opposite party."

There remains the contention of the attorney general that the evidence does "not establish any agreement or contract between the claimant and the deceased relative to the deceased supporting the claimant." This court held in the Miller case, *supra*, that it was not necessary to prove such a contract in order to establish dependency.

Where evidence in a compensation case is undisputed (*Horst v. Southern Idaho Oil Co.*, 49 Ida. 58, 286 Pac. 369; *Rabideau v. Cramer, ante*, p. 154, 81 Pac. (2d) 403), or the findings of the Industrial Accident Board are not supported by competent and substantial evidence, they are not conclusive on appeal. (*Ybaibarriaga v. Farmer*, 39 Ida. 361, 367, 228 Pac. 227; *In re Hillhouse*, 46 Ida. 730, 271 Pac. 459; *In re Larson*, 48 Ida. 136, 279 Pac. 1087; *Smith v. McHan Hardware Co.*, 56 Ida. 43, 48 Pac. (2d) 1102.)

The award of the board is reversed, and the cause remanded, with instructions that it find, in harmony with this opinion, that appellant is partially dependent on the deceased. We further direct that the board also make findings as to the extent and degree of dependency which existed at the time of the death of Andrew Chambers and the average weekly wages of the deceased, and, on such findings, make an award in accordance with the provisions of sec. 43–1101,

I. C. A., as amended by chapter 147, 1935 Session Laws, and correlative sections, I. C. A.

Costs awarded to appellant.

Morgan, Ailshie, Budge and Givens, JJ., concur.