No. 6960.    March 24, 1942)

GEORGE PAULL, Appellant, v. PRESTON THEATRES CORPORATION, a corporation, and STATE INSURANCE FUND, Respondents.

(124 Pac. (2d) 562)

Rehearing denied April 27, 1942

P. J. Evans, for Appellant.

Frank L. Benson, for Respondents.

BUDGE, J.—This is an appeal from a final order of the Industrial Accident Board denying appellant compensation for an alleged injury by accident arising out of and in the course of his employment, and in favor of his employer Preston Theatres Corporation, a corporation, and its surety, State Insurance Fund. In its findings of fact the Board found:

"That on the 30th day of January, 1941, the defendant

Preston Theatres Corporation, was, and for several years prior thereto had been operating the Isis Theatre in the City of Preston and had secured the payment of compensation to its employees by insuring and keeping insured. the same with the defendant, State Insurance Fund." (Finding No. 1.)

"That on said 30th day of January, 1941, the claimant, George Paull, was, and for several years prior thereto had continuously been, in the employ of the defendant, Preston Theatres Corporation as the Manager of the said Isis Theatre * * * in said City of Preston; * * * *." (Finding No. 2.)

"That as a part of his duties as Manager of said Isis Theatre the claimant looked after advertising the shows in said theatre, the writing and placing of placards and other display advertising and for the purpose of writing and preparing display advertising he, during all of the aforesaid time, maintained a workshop in the basement of his dwelling in Preston; that the maintaining of said workshop in his dwelling by the claimant was well known to, and acquiesced in, by his employer." (Finding No. 3.)

"That on the morning of the said 30th day of January, 1941, the claimant walked from his dwelling to the above mentioned Isis Theatre and conferred with some of his employees (;) there; later he returned to his dwelling for the purpose of getting some advertising matter; that he went into his workshop, got the advertising matter, put it into his automobile, which automobile had been driven into a passageway alongside of his dwelling; after he had put his advertising material into the said automobile, he backed the automobile out of the passageway to the street in front of his dwelling; that at that time there was snow on the ground on said street and when the automobile reached the street he could not move it further because there was no traction on the snowy ground; that he went to the porch of his dwelling, picked up a rug which was lying on it and called his wife to help him get the automobile started; that the wife entered the automobile and claimant from the rear thereof attempted to put the rug under the rear wheels for the purpose of obtaining traction for them; that he told his wife to start the car and

the wife started the engine and spun the wheels backwards causing the rug on which claimant was standing to be drawn under the spinning wheels, one wheel passing over the claimant's legs; that the claimant was helped into his house where he laid down for a little while; that as a result of his legs being run over as above stated, they became badly discolored; that lat(t)er and in the afternoon of said day he went to the Theatre where he showed his legs to some of the employees working in said Theatre and they observed that the legs were discolored." (Finding No. 4.)

"That the running over the claimant as above stated was an accident arising out of and in the course of his employment with the defendant, Preston Theatres Corporation." (Finding No. 5.)

"That after the said 30th day of January, 1941, the claimant never again walked from his dwelling to the said theatre but rode in his automobile; that as a result of said accident the claimant was not disabled for work for more than seven days and lost no earnings." (Finding No. 6.)

"That sometime about the 24th or 26th day of February, 1941, the claimant suffered so severely from pains in his legs that he called a physician and surgeon, which physician and surgeon called at claimant's house and examined him and found no evidence of any injury resulting from the above mentioned accident but found that he had intense pain in his right leg and was staggering on his feet; that claimant's right foot was blanched and that there was no circulation in his right leg but still a little pulsation in the ankle and under the knee of the left leg and that said left foot was also blanched; that about a week after the physician was first called and examined him, he caused the claimant to be taken to a hospital where later the claimant's left leg was amputated between the knee and ankle and his right leg between the knee and hip joint; that for the services rendered by the said physician and surgeon to the claimant, and for hospitalization, claimant incurred expenses in the sum of $600, $350 of which was for hospitalization." (Finding No. 7.)

"That the amputation of claimant's legs as above stated

was not the result of his accident sustained by him on the 30th day of January, 1941, as above stated but was the result of thrombo angiitis obliterons, also known as Berger's disease, with which disease the claimant was afflicted." (Finding No. 8.)

From the foregoing findings of fact the Board made the following ruling of law:

"That the claimant, George Paull, is not entitled to an award for compensation against the defendants, Preston Theatres Corporation, employer, or State Insurance Fund, surety, or either of them, and that his claim for compensation should be denied and his application dismissed;"

Whereupon the Board made the following order:

"WHEREFORE IT IS ORDERED AND THIS DOES ORDER THAT the claimant, George Paull, take nothing by this proceeding and that his claim for compensation against the defendants, Preston Theatres Corporation, employer, and State Insurance Fund, surety, and each of them, be and the same hereby is denied and his application dismissed."

From which order this appeal is prosecuted.

Appellant makes and relies upon the following assignments of error:

"1. That the findings of fact are not based on any substantial, competent evidence, in that

"a. That part of Finding No. IV, 'that as a result of said accident the claimant was not disabled for work for more than seven days and lost no earnings,' is not supported by any evidence adduced at the hearing, and the Board erred in so holding.

"b. That the Board erred in making Finding No. VIII * * * for the reason that such finding is not supported by any substantial, competent evidence in the record.

"2. That the Board erred in making the Ruling of Law on said Findings * * * for the reason that Findings of Fact Nos. 6 and 8 of the Board upon which said Ruling of Law is based, are not supported by any substantial, competent evidence in the record.

"3. That the Board erred in making the order appealed from * * * for the reason that said Order is based upon a Ruling of Law which in turn is based upon Find-

ings of Fact that are not based on any substantial, competent evidence in the record."

The pertinent question here for determination is whether or not there is any substantial, competent evidence to sustain the Board's findings of fact, Nos. 4, 6, and 8. Findings of the Industrial Accident Board, when supported by substantial, competent evidence will not be disturbed on appeal. (I. C. A. 1932, sec. 43-1409, 1408, 1413, as amended by S. L. 1937, Chap. 175.) Conversely, when the findings are not supported by substantial, competent evidence, they are not binding or conclusive, and upon appeal will be set aside.[1] Whether such findings are supported by substantial, competent evidence is a question of law to be determined by the court. (*Reader v. Milwaukee Lumber Co.*, 47 Idaho 380, 275 P. 1114; *In Re Larson*, 48 Idaho 136, 279 P. 1087; *Jenkins v. Boise Payette Lumber Co.*, 49 Idaho 24, 287 P. 202; *Stoddard v. Mason's Blue Link Stores*, 55 Idaho 609, 45 P. 2d 597; *Howard v Texas-Owyhee Min Co.*, 62 Idaho 707, 115 P.

---

[1] Const. art. 5, as amended, S. L. 1937, p. 498; *McNeil v. Panhandle Lumber Co.*, 34 Idaho 773, 203 P. 1068; *Ybaibarriaga v. Farmer*, 39 Idaho 361, 228 P. 227; *Taylor v. Blackwell Lumber Co.*, 37 Idaho 707, 218 P. 356; *Butler v. Anaconda Copper Min. Co.*, 46 Idaho 326, 268 P. 6; *In re Hillhouse*, 46 Idaho 730, 271 P. 459; *Reader v. Milwaukee Lumber Co.*, 47 Idaho 380, 275 P. 1114; *Jenkins v. Boise Payette Lumber Co.*, 49 Idaho 24, 287 P. 202; *Croy v. McFarland-Brown Lumber Co.*, 51 Idaho 32, 1 P. 2d 189; *Dunnigan v. Shields*, 52 Idaho 196; 12 P. 2d 773; *Liberg v. Genessee Union Warehouse Co.*, 55 Idaho 123, 38 P. 2d 999; *Delich v. Lafferty Shingle Mill Co.*, 49 Idaho 552, 290 P. 204; *Strouse v. Hercules Min. Co.*, 51 Idaho 7, 1 P. 2d 203; *Scarborough v. Beardmore*, 55 Idaho 229, 41 P. 2d 290; *Ramsay v. Sullivan Min. Co.*, 51 Idaho 366, 6 P. 2d 856; *Vaughn v. Robertson & Thomas*, 54 Idaho 138, 29 P. 2d 756; *Feuling v. Farmers' Co-op. Ditch Co.*, 54 Idaho 326, 31 P. 2d 683; *Fields v. Buffalo-Idaho Min. Co.*, 55 Idaho 212, 40 P. 2d 114; *Beaver v. Morrison-Knudsen Co.*, 55 Idaho 275, 41 P. 2d 605, 97 A. L. R. 1399; *Stoddard v. Mason's Blue Link Stores*, 55 Idaho 609, 45 P. 2d 597; *Bybee v. Idaho Equity Exchange*, 57 Idaho 396, 65 P. 2d 730; *In re Black*, 58 Idaho 803, 80 P. 2d 24; *Chambers v. State ex rel. Parsons*, 59 Idaho 200, 81 P. 2d 748; *Potter v. Realty Trust Co.*, 60 Idaho 281, 90 P. 2d 699; *Brink v. H. Earl Clack Co.*, 60 Idaho 730, 96 P. 2d 500; *Watkins v. Cavanagh*, 61 Idaho 720, 107 P. 2d 155; *Bower v. Smith*, 63 Idaho 128, 118 P. 2d 737; *Stroscheim v. Shay*, 63 Idaho 360, 120 P. 2d 267.

2d 749; *Horst v. So. Idaho Oil Co.*, 49 Idaho 58, 286 P. 369.)

The record discloses that up to January 30, 1941, the date of the accident, appellant was in good health, performing daily labor, was not then, nor had he been, under the care of a physician for any ailment. On direct examination, touching the condition of his health, appellant testified, among other things, as follows:

"Q. I will ask you now, up to the 30th day of January of this year [1941], what was the condition of your health generally up to that time?

"A. I thought good.

"Q. Had you ever had any trouble with your health or been under a doctor's care?

"A. Nothing that I would consider serious at all—I didn't pay much attention to it. I would sometimes go and have an examination for life insurance or something like that.

"Q. Had you been under a doctor's care, say, immediately prior to the 30th of January of this year?

"A. No.

\*      \*      \*      \*      \*      \*      \*      \*      \*

"Q. Had you taken any treatments from a doctor, or been under a doctor's care prior to that date as far back as you can recall, and if so, how long before that date?

"A. No, I don't think I had.

\*      \*      \*      \*      \*      \*      \*      \*      \*

"Q. You say you never have been refused upon an insurance application?

"A. No.

\*      \*      \*      \*      \*      \*      \*      \*      \*

"Q. \* \* \* did you have any affliction \* \* \* physical incapacity of any kind that interferred with the performance of your duties with the company on the 30th day of January of this year?

"A. No, Sir.

\*      \*      \*      \*      \*      \*      \*      \*      \*

"Q. * * * were you suffering any pain of any kind prior to this incident that you have just testified to?

"A. No more than just like anybody else would, sometimes I would get a charley horse in my legs, but that particular day I was O. K. I had been taking care of my duties."

Mrs. George Paull, wife of appellant, testified, among other things, that she and appellant were married in 1907, and had lived together as husband and wife since that time. The following question was propounded to her: "Do you know what the facts are in regard to your husband being able to attend to his work prior to the accident?" To which she made the following answer: "I have never known him to miss a day's work in my life."

Witnesses Hill and Rawlings, employees of respondent corporation, who worked with appellant in connection with the operation of the theatre for sometime prior to January 30, 1941, both testified that appellant, prior to the accident, worked everyday; that after the accident he had great difficulty in working. The Board found that appellant sustained an injury by accident arising out of and in the course of his employment with the respondent corporation; that as a result of said accident the appellant never again walked from his dwelling to the place of his employment; that following the accident appellant's legs were amputated, one between the knee and ankle and the other between the knee and hip joint; "that the amputation of claimant's legs as above stated was not the result of his accident sustained by him on January 30, 1941, * * * but was the result of thrombo angiitis obliterons, also known as Berger's [Buerger's] disease, with which disease the claimant was afflicted."

Dr. Cutler testified that he examined appellant for life insurance two years prior to the accident; that on February 24, 1941, he again examined appellant at which time appellant had Buerger's disease, but that he was not in a position to say that appellant had Buerger's disease prior to February 24, 1941. He further testified in answer to the following questions:

"Q. Are you able to state, Doctor, whether the injuries related to you as occurred on the 30th day of January of

this year in the course of which Mr. Paull claims the car ran over both of his legs, could cause such crushing of the tissues of the general system as would result in the condition that you found him in when you were called in, if permitted to go untreated for the length of time that it had in this case?

"A. I think it would be possible, yes. If the injury was sufficient to damage the blood vessel currents, then that thing could happen all right. I hadn't considered at the time I first saw him that that was the thing that had happened, but with the diseased condition of the artery present, if the injury was sufficient I can say that it might result in precipitating the immediate obstruction.

"Q. Do you know of your own knowledge, Doctor, that the pains that George had stated he felt in his legs were caused by what you term intermittent claudication without having made a personal examination of him to determine that fact?

"A. I couldn't say positively, no. * * * *.

*     *     *     *     *     *     *     *     *

"Q. From your examination of Mr. Paull, from the history he gave and from what you learned of this accident, in your opinion, would the accident have anything to do with necessitating the amputation?

"A. I think it might have in this respect only. If he had Berger's [Buerger's] disease that was already narrowing the arteries, and the accident was severe enough to bruise the arteries themselves, I don't say that it did— I didn't see it, but if it did do that and he continued to walk on them, and the pains in the legs were continuous after the accident, then I would think it was possible that the accident might have precipitated more or less immediate occlusion of these arteries."

Dr. Roberts, called as an expert on behalf of respondents, testified as follows in answering the following questions:

"Q. In your opinion, does trauma accelerate the condition of this disease?

"A. It may.

*     *     *     *     *     *     *     *     *

"Q. A trauma in order to affect the artery would have to be of considerable extent, would it not?

"A. I would say it would have to be a pretty severe trauma.

\* \* \* \* \* \* \* \*

"Q. Does dry gangrene develop from a trauma?

"A. It can be secondary to a trauma.

"Q. How long does it take this to appear following a trauma?

"A. It would come within three or four days. The bursting of the blood vessel would soon shut out the blood supply to the part.

\* \* \* \* \* \* \* \*

"Q. \* \* \* Now, you say that there would have to be severe trauma to cause the condition existing in Mr. Paull's case, or causing the condition that necessitated the amputation, what do you mean by trauma?

"A. A crushing injury.

\* \* \* \* \* \* \* \*

"Q. Gangrene may be caused by infections resulting from an injury to a limb, may it not?

"A. Anything that shuts the blood supply to a part off may cause gangrene. Anything that shuts off the blood supply."

The evidence is conclusive that appellant sustained a severe crushing or grinding of his legs as a result of the wheel of the automobile passing over them; that they were black and blue, highly swollen, and remained so for sometime; that after the accident he was unable to walk or stand on his legs for any appreciable length of time; that the pain grew more severe and his condition gradually worse, necessitating their amputation. From which no other inference can be drawn than that the injury was of such a severe nature as to close off the circulation of the blood supply in appellant's legs.

Dr. Cutler testified that it would be possible that the injury received by appellant and the means by which it was inflicted, would result in the condition he found ap-

pellant's legs when he called upon him February 24, 1941. He further testified that the injury sustained by appellant, "If he had Berger's [Buerger's] disease that was already narrowing the arteries," might have precipitated more or less immediate occlusion of these arteries and necessitated the amputation.

We have therefore the positive testimony of the physicians that a severe trauma or crushing of the arteries could result in acceleration of the disease and necessitate amputation. Neither Dr. Cutler nor Dr. Roberts had made a personal examination of appellant prior to the date of the accident for the purpose of determining whether appellant had Buerger's disease, and both Doctors testified that in the absence of such an examination it would be impossible to determine whether appellant had Buerger's disease prior to the accident. Dr. Roberts testified as to certain symptoms found present when one is afflicted with Buerger's disease; however, an examination of the record fails absolutely to disclose that appellant had any of the symptoms, present in Buerger's disease, prior to the accident. Considering the testimony offered in behalf of appellant, including that of the physicians, no other logical conclusion can be reached than that the injury sustained by appellant resulted in the amputation of his legs. The evidence of the physicians, when summarized and considered, is so speculative, conjectural and uncertain that it wholly fails to constitute substantial or competent evidence to support the Board's findings.

▆▆▆ Even conceding, without admitting, that appellant was suffering from Buerger's disease, it is clearly shown that the injury accelerated the Buerger's disease necessitating amputation. The rule being that if there is a pre-existing disease, the employee is entitled to recover for all the consequences attributable to the injury in the acceleration or aggravation of such disease. Such aggravation or acceleration, permanent and progressive in its nature, will entitle the employee to compensation. Mere pre-disposing physical condition does not affect the right to compensation.

"Regardless of pre-existing conditions, if a workman's

disability is precipitated by an accident arising out of his employment, which disability would in all probability not have arisen but for such accident, the statute contemplates full compensation." (*Strouse v. Hercules Min. Co.*, 51 Ida. 7, 1 P. 2d 203.)

"The fact that appellant was suffering from a pre-existing and progressive disease of appendicitis would be immaterial, if the injury sustained was the result of the accident." (*Hanson v. Independent School Dist.*, 57 Idaho 297, 65 P. 2d 733.)[2]

Appellant in his petition for hearing, by amendment, alleged in paragraph 3:

"That the employer was notified of said accident on the 5th day of May, 1941, and that claim in writing, containing the name and address of the employer and the time, place, nature and cause of the injury, signed by the claimant, was made on or about the 5th day of May, 1941, and filed with the Industrial Accident Board."

Respondents in answering said paragraph 3 "deny the said allegations contained therein."

At the hearing before the Board, appellant testified on direct examination with regard to the notice as follows:

"Q. Now, what do you know, Mr. Paull, about giving notice of your injury to the company, that is to your employer? Do you know what was done with reference to that?"

"A. No, I don't.

"Q. During the time that you were in the hospital, or after you went under the attention of Dr. Cutler, were any documents presented to you for signature?

"A. It seems to me like the doctor brought something in—J. N. Larsen filled it out for me.

\*    \*    \*    \*    \*    \*    \*    \*

"Q. I show you, Mr. Paull, the original report of in-

[2] (Authority in re acceleration.) *McNeil v. Panhandle Lumber Co., supra; In re Larson, supra; Scarborough v. Beardmore, supra; McDonald v. Treasurer of State of Idaho*, 52 Idaho 535, 16 P. 2d 988; *Fealka v. Federal Min. etc., Co.*, 53 Idaho 362, 24 P. 2d 325; *Kelley v. Prouty*, 54 Idaho 225, 30 P. 2d 769; *Mell v. Larson*, 54 Idaho 754, 36 P. 2d 250; *Beaver v. Morrison-Knudsen, supra; Leach v. Grangeville Highway Dist.*, 55 Idaho 307, 41 P. 2d 618.

jury and claim for compensation and ask you to examine that and tell whether that is your signature to the claim?

"A. Yes, this is.

"Q. And do you know who prepared that for you?"

"A. I think this was the one that J. N. Larsen filled out.

"Q. I direct your attention to the signature on the bottom of the first page of that notice, and ask you whose signature that is, if you know?

\*   \*   \*   \*   \*   \*   \*   \*

"A. Lawrence Jones. [Secretary of Preston Theatres Corp.]

\*   \*   \*   \*   \*   \*   \*   \*

"Q. When that report, or notice was made out, where were you, Mr. Paull?

"A. I was in the hospital."

The foregoing is the only reference to the giving of notice of the injury to appellant's employer at the hearing before the Board. The Board found "That on the 5th day of May, 1941, the claimant for the first time notified his employer of the said accident above described and made a claim for compensation, \* \* \*." Whether appellant's employer had actual knowledge of the injury by accident prior to May 5, 1941, is not disclosed by the record, the Board simply finding that appellant had written notice on May 5, 1941.

Respondents made no objections and offered no suggestion, before the Board, that the notice was not timely given to appellant's employer. However, in this court, and for the first time, they call attention to the Board's finding with regard to the date of notice and seek to make the point that notice was not timely given to appellant's employer, as provided by I. C. A., sec. 43-1202. Respondents, under the facts and circumstances of this case, in order to raise the question of the timely giving of notice should have raised it before the Board; not having done so, they waived it. It cannot be raised in this court for the first time.

In *Spring Canyon Coal Co. v. Industrial Comm.*, 58 Utah 608, 201 P. 173, in the course of that opinion it is held:

"It is elementary that, in order to avail himself of the provisions of the statute of limitations, a party must in some form indicate that he relies on the defense, usually by pleading it. Where there are no pleadings required, the defense of the statute of limitations may, nevertheless, be invoked if done in proper time and by properly indicating that it is relied on. It is also elementary that, unless pleaded or relied on, the statute is waived."

In *Utah Deleware Min. Co. v. Ind. Comm.*, 76 Utah 187, 289 P. 94, the following language is used:

"At * * * rehearing the mining company appeared and then for the first time interposed a plea of the statute of limitations. The general rule is that a party can rely on the statute of limitations only where he pleads it and ordinarily is required to interpose the plea at his first opportunity. Generally, new trials or rehearings are not granted to give a defeated party an opportunity to interpose the statute of limitations where he theretofore and before an adjudication on merits had full opportunity to interpose it."

In *Ind. Comm. v. Co-op Oil Co.*, 93 Colo. 192, 24 P. 2d 753, where notice was not given within the statutory time, and where the defense of "late notice" was not raised until appeal was taken, the court said: "Moreover, this objection was not made until the company filed its petition for review * * * .*By such delay the defense of the statutory limitation was waived.*" (Italics ours.)

In *Dewar Coal Min. Co., v. S. I. Comm.*, 88 Okla. 24, 211 P. 76, the following language is used:

" * * * if the respondents had desired to rely on the defense that they were prejudiced by the failure of the claimant to give the statutory notice, it was their duty to have urged such defense before the Commission and offered testimony tending to establish such defense, or by requesting the Commission to make a finding in their favor on the theory urged here for the first time that they were prejudiced by the failure of the claimant to give the statutory notice. And, they not having so proceeded in the

trial before the Commission, we think they waived such defense."

In the instant case the Board found the date that written notice was given but did not find and were not requested to find that it was not timely given and that, therefore, appellant could not recover. To the effect that an employer or insurer may waive defense of statutory limitation with regard to notice, see the following cases: *Lindblom v. Employer's Liability Assur. Corp.*, 88 Mont. 488, 295 P. 1007; *Rucks-Brandt Const. Co. v. Price*, 164 Okla. 264, 23 P. 2d 690; *Johnson v. Miller*, 161 Okla. 31, 16 P. 2d 1083; *Greiffenstein v. State Ind. Comm.*, 166 Okla. 27, 26 P. 2d 747; *Greer v. Dunnington*, 166 Okla. 302, 27 P. 2d 630.

After a careful examination and consideration of the entire record we have concluded that there is a total lack of competent, substantial evidence to support the Board's findings Nos. 4, 6, and 8, ruling of law and order denying appellant compensation; however, there is competent, substantial evidence to justify an award in his favor. The award of the Board denying appellant compensation will be and the same is hereby set aside, and the cause is remanded with instructions to the Board to enter an award in appellant's favor. Costs to appellant.

Givens, C.J., Morgan, Holden, and Ailshie, JJ., concur.