(No. 6170.  July 8, 1935.)

EVA SMITH, Claimant and Respondent, and STATE OF IDAHO ex rel. HARRY C. PARSONS, State Auditor, Claimant and Cross-Appellant, v. McHAN HARD-WARE COMPANY, Employer, and STATE INSUR-ANCE FUND, Surety, Defendants and Appellants.

[48 Pac. (2d) 1102.]

Leslie J. Aker, for Defendants and Appellants.

Bert H. Miller, Attorney General, and J. W. Taylor, Assistant, for Claimant and Cross-Appellant.

R. B. Scatterday and C. J. Schooler for Eva Smith, Claimant and Respondent.

J. R. Smead, on Petition for Rehearing.

HOLDEN, J.—The claimant, Eva Smith, and the deceased, M. F. Smith, were married in 1904. In 1917, the Smiths moved to Canyon county, Idaho, where, in 1927, by foreclosure proceedings, they lost practically everything they had, to wit, an eighty-acre farm, livestock and other personal property. Having lost the family home, and being in destitute circumstances, the wife went to live with a brother in Portland, Oregon, and kept house for him without compensation, other than food and shelter. The deceased remained in Idaho, working at whatever he could find. April 23, 1931, about four years after the loss of the family home, the deceased was employed by appellant McHan Hardware Company as a sheepherder.

Appellant McHan Hardware Company was and is a co-partnership, composed of E. J. McHan and Vas McHan, brothers. It appears that the co-partnership operated a hardware store at Fairfield, Idaho, and that it was also engaged in "agricultural pursuits," as defined by section 43–904, I. C. A., to wit, the raising of sheep and other livestock near that town. July 15, 1930, appellant McHan Hardware Company, for the sake of brevity hereinafter

called the "company," filed, in writing, an election that the Workmen's Compensation Law should apply to all employees employed by it in its business of raising sheep and other livestock, thus bringing the deceased within the protection of the statute.

The company owned and operated ranches, and conducted its livestock business, in a locality infested with sage ticks. The deceased was required to, and did, herd and care for the company's sheep constantly, day and night, until May 12, 1931, when he was taken sick, at which time he was taken to a hotel at Fairfield by E. J. McHan, where he was examined by Dr. W. B. Parkinson, and found to be suffering from Rocky Mountain spotted fever. Tick bites were found by Dr. Parkinson on the lower parts of Smith's legs,. around his ankles, and one tick was found alive under the arm, and was removed. Smith died at the hotel May 21, 1931.

May 20, 1932, claim for compensation was filed by respondent, Eva Smith, widow, with the Industrial Accident Board. After a hearing, an order was entered by the Accident Board, disallowing her claim and denying compensation, on the ground that deceased left no dependents surviving, and thereupon, under the provisions of section 43–1101, I. C. A., made an award of $1,000 to the Industrial Administration Fund. On appeal, the district court set aside the award to the Industrial Administration Fund, and entered judgment in favor of respondent. From that part of the judgment, vacating the award to the Industrial Administration Fund, the State of Idaho has appealed, and from that part of the judgment in favor of respondent, the company and the State Insurance Fund, surety, have appealed to this court.

It is first contended by appellants that there was no "injury by accident," within the meaning of the statute (sections 43–1809, 43–1810 and 43–1001, I. C. A.), and that disability from disease, resulting in death, is not compensable.

There is no merit in that contention. The locality where the deceased was employed was infested with wood ticks. From the date of his employment to the day he was taken

sick, the deceased was constantly with the sheep. And, we repeat, the physician who attended him throughout his sickness found what he testified were "tick bites" on the lower part of Smith's legs, around his ankles, and a live wood tick was found under an arm. Smith's physician had had considerable experience with Rocky Mountain spotted fever, and he testified that Smith had and died with that fever. There is not a scintilla of evidence in the record that Smith could have contracted Rocky Mountain spotted fever in any other way than by having been bitten by wood ticks, carrying the bacilli of that fever, and it is sufficiently clear that Smith was bitten during and in the course of his employment as a sheepherder. A wood tick bite is an accident, and the resulting injury is compensable. (*Reinoehl v. Hamacher Pole etc. Co.*, 51 Ida. 359, 6 Pac. (2d) 860; *Roe v. Boise Grocery Co.*, 53 Ida. 82, 21 Pac. (2d) 910.)

It is next contended that the findings of the board that Eva Smith was not a dependent at the time of the accident, within the contemplation of the statute, are conclusive, and that the conclusions of the district court, contrary thereto, should be set aside.

That contention, as we understand it, is that the board's findings on the issue of the dependency of the respondent were not mere conclusions of law, as concluded and held by the district court, but were actually findings of fact, and, therefore, conclusive, and, for that reason, the conclusions of law of the district court ought to be set aside.

Among other cases, appellants cite and rely upon *Ybaibarriaga v. Farmer*, 39 Ida. 361, 228 Pac. 227, and *Burchett v. Anaconda Copper Min. Co.*, 48 Ida. 524, 283 Pac. 515. In the first case this court held that: "In cases where the evidence is not conflicting and not in dispute, as in the case at bar, the application of the law to such undisputed evidence raises a question of law, not of fact," which was approved in the Burchett case, *supra*. There is no conflict or dispute in the evidence in the case at bar on the question of the dependency of respondent Eva Smith; therefore, it was proper for the district court to apply the law to the undisputed evidence. (See also *Johnston v. A. C. White*

*Lumber Co.,* 37 Ida. 617, 624, 217 Pac. 979, 981; *Pierce v. Phelps Dodge Corp.,* 42 Ariz. 436, 26 Pac. (2d) 1017; 71 C. J., p. 1295.)

And it is earnestly contended that the deceased did not, after the year 1927, contribute anything to the support of his wife and family, and forcefully argued that the respondent was *actually* dependent for support upon her children and her brother, and not upon the deceased.

Section 43–1102, I. C. A., provides:

"The following persons, and they only, shall be deemed dependents and entitled to compensation under the provisions of this act:

. . . . . . . . . . . . .

"The widow only if living with the deceased at the time of the accident, or actually dependent wholly or partially, upon him."

While it is true the decedent did not contribute much to the support of his wife and family, he did make some small contributions, and, in addition, paid community debts, amounting to about $700, some of which, at least, were contracted for groceries for the family at a time when decedent and respondent were living together in their Idaho home.

The inability of a husband to obtain work (Smith was not regularly employed), or to perform sufficiently remunerative services to enable him to support his family, and the consequent necessity that they temporarily live at different places in order to obtain lodging and the necessaries of life, do not render the wife and children any the less the "dependents of the husband" than they would be if he were providing them with all the comforts of life. (*Veber v. Massachusetts Bonding & Ins. Co.,* 224 Mass. 86, 112 N. E. 485; *Geytko v. P. & E. Coal Co.,* 88 Pa. Super. Ct. 522; *Harrison v. Cargill Com. Co.,* 126 Neb. 185, 252 N. W. 899. See, also, *Creasy v. Phoenix U. Co.,* 276 Pa. 583, 120 Atl. 659; *Merrill v. Penasco Lumber Co.,* 27 N. M. 632, 204 Pac. 72.)

And the destitute circumstances of the family, which made it necessary for decedent and respondent to live in different places, completely negative intent on the part of either to

desert and abandon the other, and respondent, having no income on which she could draw for support, and no property, it follows that at the time of the accident she was actually dependent upon decedent within the meaning of section 43–1102, *supra*.

It is also contended that neither the board nor the court had jurisdiction to hear or determine respondent's claim for compensation, because of failure to give notice of injury to the company within the time required by statute.

Appellant company had operated its livestock business in territory infested with infected wood ticks for about fifteen years before the accident in question occurred, whereas, Smith was a stranger, and, so far as the record discloses, did not know the territory in which he was herding and caring for the company's sheep was so infested. Therefore, it may reasonably be inferred that deceased did not know what was the matter with him, nor that he had suffered an accident. On the other hand, E. J. McHan testified that he knew of the presence of wood ticks in the territory where Smith was employed, and having found the deceased sick, at a time of the year when infected wood ticks were "prevalent," and having taken him to Fairfield for medical care, gives much reason to infer that McHan knew that Smith had been bitten by infected wood ticks. At any rate, it sufficiently appears that the company knew the conditions under which Smith was working, and had the same knowledge of the accident that Smith had. (*Page v. State Insurance Fund et al.*, 53 Ida. 177, 22 Pac. (2d) 681; *Crowley v. Idaho Industrial Training School et al.*, 53 Ida. 606, 26 Pac. (2d) 180; *Beaver v. Morrison-Knudsen Co.*, 55 Ida. 275, 41 Pac. (2d) 605, 97 A. L. R. 1399; sec. 43–1205, I. C. A.)

We have examined the record carefully and have been unable to find any evidence of either the making or service of a claim for compensation upon the employer. It is contended by appellants, and tacitly admitted by respondent, that no claim was made or served upon the employer, hence the contention by appellants that neither the board

nor the trial court had jurisdiction to hear or determine respondent's claim for compensation against either.

Appellants, by their answer, specially plead section 43–1202, *supra,* in bar of a recovery of compensation by respondent, which section reads as follows:

"No proceedings under this act for compensation for any injury shall be maintained unless a notice of the accident shall have been given to the employer as soon as practicable but not later than sixty days after the happening thereof, and unless a claim for compensation with respect to such injury shall have been made within one year after the date of the accident; or, in the case of death, then within one year after such death, whether or not a claim had been made by the employee himself for compensation. Such notice and such claim may be made by any person claiming to be entitled to compensation or by some one in his behalf. If payments of compensation have been made voluntarily the making of a claim within said period shall not be required."

Section 43–1202, *supra,* and sections 43–1203 and 43–1204, I. C. A., being *in para materia,* must be construed together. Section 43–1203 provides:

"Such notice and such claim shall be in writing, and such notice shall contain the name and address of the employee, and shall state in ordinary language the time, place, nature and cause of the injury, and shall be signed by him or by a person on his behalf, or, in the event of his death, by any one or more of his dependents, or by a person on their behalf. The notice may include the claim."

And section 43–1204 reads:

"Any notice under this act shall be given to the employer, or, if the employer be a partnership, then to any one of the partners. If the employer be a corporation, then the notice may be given to any agent of the corporation upon whom process may be served, or to any officer of the corporation, or any agent in charge of the business at the place where the injury occurred. Such notice shall be given by delivering it or by sending it by mail by registered letter addressed to the employer at his or its last known residence or place of business. The foregoing provisions shall apply to the making of a claim."

While section 43–1202, *supra,* is definite and certain in requiring that notice of accident shall be given the employer, it does not expressly require that a claim for compensation shall be made upon the employer (thus creating some uncertainty), although that seems to be a reasonable inference from the language used. That uncertainty is, however, amply clarified by sections 43–1203 and 43–1204, *supra,* we think.

It will be noted that section 43–1203, *supra,* provides that "such claim" (meaning the claim for compensation mentioned in section 43–1202, *supra*), "shall be in writing," and that the "notice" (referring to the notice of accident required to be given to the employer by said last-mentioned section), "may include the claim," and that section 43–1204, *supra,* provides that "such notice shall be given by delivering it or by sending it by mail by registered letter addressed to the employer at his or its last known residence or place of business," and also that "the foregoing provisions shall apply to the making of a claim."

Inasmuch as it is expressly provided by section 43–1202, *supra,* that notice of accident must be given to the employer, and that such notice may include a claim for compensation (section 43–1203, *supra*), and it being also expressly provided by section 43–1204, *supra,* that its provisions, concerning the delivering or mailing of "notice" to the employer, shall be applicable to the making of a claim, leaves no room for doubt but that a claim for compensation by a dependent must be both made and served upon an employer in case of death of an injured employee, within a year after death (the period prescribed by section 43–1202), either by delivering a claim to the employer, or by sending it to him or it by registered letter.

Appellants having pleaded the bar of the statute (section 43–1202, *supra*), did not waive it, and no claim having ever been made and served upon appellant McHan Hardware Company, makes it unnecessary to determine whether the statute (section 43–1202, *supra*), prescribing the time within which a claim shall be made and served, is mandatory, or whether it can be waived by failure to plead it, for

the reason that, in either case, respondent could not recover against appellant McHan Hardware Company.

Next comes the contention that the trial court was without jurisdiction to render judgment against appellant State Insurance Fund, in that while respondent filed a claim for compensation with the board, and caused a duplicate to be delivered to the Fund, the filing with the board, and delivery to the Fund, of the claim, were not within the period fixed by section 43–1202, *supra*. The determination of the question as to whether respondent's claim was filed with the board, and served upon the Fund, within the period prescribed by law, depends upon the date of Smith's death, because the record shows conclusively that her claim was both filed with the board and served upon the Fund May 20, 1932. As to the date the decedent died, the manageress of the hotel where he died testified that Smith was brought to the hotel May 12, 1931; that he remained at the hotel nine days, and that she believed he died May 20, 1931. Dr. Parkinson, the attending physician, testified that Smith died May 21, 1931, and then, in effect, testified that he could not positively fix the date of death except by referring to the certificate of death (which shows that Smith died at 9 p. m., May 21, 1931) filed with the Department of Public Welfare, Bureau of Vital Statistics, January 2, 1932, prepared by someone other than the doctor, and that he had no independent recollection of the matter. Earl Smith, a son of decedent, testified that he went to see his father at Fairfield, arriving there in the afternoon of May 20, 1931; that he left Fairfield in the afternoon of May 21, 1931, and that at the time he left his father was alive, and that he returned May 22, 1931, and that when he returned his father was dead. While the manageress of the hotel testified that she *believed* Smith died May 20, 1931, she also testified unequivocally that decedent was brought to the hotel May 12, 1931, and that he remained there nine days, which would fix May 21, 1931, as the date of death, rather than May 20th. And Earl Smith, being a son of the decedent, would be more likely to remember correctly the date of his father's death than strangers. That evidence, we think, is amply

sufficient to establish the fact that Smith died May 21, 1931, and that the claim of respondent for compensation was filed with the board (as found by the board) within a year after Smith's death, and that it was also served upon the Fund within that period.

Therefore, we conclude that the lower court had jurisdiction to render judgment against the Fund, which brings us to the consideration of the nature of the liability of an employer and the Fund.

Section 43-1605, I. C. A., reads as follows:

"Every policy of insurance in the state insurance fund and every guaranty contract or surety bond covering the liability of the employer for compensation, shall cover the entire liability of the employer to his employees covered by the policy, bond or contract, and also shall contain a provision setting forth the right of the employees to enforce in their own names either by at any time filing a separate claim or by at any time making the surety a party to the original claim, the liability of the surety in whole or in part for the payment of such compensation; provided, that payment in whole or in part of such compensation by either the employer or the surety shall, to the extent thereof, be a bar to the recovery against the other of the amount so paid."

That statute (and its provisions must be read into all contracts of insurance issued by the Fund) requires, among other things, that every contract of insurance of the Fund shall cover the entire liability of the employer to his employees (covered by the policy), for compensation; that the policy shall contain a provision setting forth the right of the employees so covered to enforce their claims by filing *separate claims;* and then, to make its intention clear that claims for compensation might be prosecuted against either the State Insurance Fund, or the employer, or both, it is provided that payment of compensation, in whole or in part, by either the employer or the surety shall, to the extent thereof, bar a recovery against the other.

Lastly, it is contended that there is no evidence establishing average weekly earnings of the decedent for the

year prior to the alleged injury; and that, therefore, the court had no basis for making the award.

Section 43–1118, I. C. A., provides:

"Average weekly wages shall be computed in such a manner as is best calculated to give the average weekly earnings of the workman during the twelve months preceding his injury; provided, that where by reason of the shortness of the time during which the workman has been in the employment, or the casual nature of the employment, it is impracticable to compute the rate of remuneration, regard may be had to the average weekly earnings which, during the twelve months previous to the injury, were being earned by a person in the same grade employed at the same work by the employer of the injured workman, or if there is no person so employed, by a person in the same grade employed in the same class of employment and in the same district.

"If a workman at the time of the injury is regularly employed in a higher grade of work than formerly during the year and with larger, regular wages, only such larger wages shall be taken into consideration in computing his average weekly wages."

There is a complete absence of testimony in the record to support the findings of the lower court as to the average weekly earnings of decedent, as required by the above-quoted statute. Therefore, the judgment of the district court is reversed, with instructions to remand the case to the Industrial Accident Board, for the purpose of taking such competent evidence as shall be offered to establish the average weekly earnings of the deceased, as provided by section 43–1118, *supra*. The board shall then make findings of fact, conclusions of law, and award, in conformity with this opinion.

In view of the conclusions reached, it is unnecessary to pass upon the appeal of the State of Idaho from that part of the judgment of the district court vacating the award made by the board to the Industrial Administration Fund.

No costs awarded.

Givens, C. J., and Budge, Morgan and Ailshie, JJ., concur.

ON PETITION FOR REHEARING.

(September 27, 1935.)

AILSHIE, J.—By petition for rehearing herein it is asserted that the court erred in two respects in its original opinion: First, that the evidence and findings in the record do not support the conclusion reached by the court that the claim for compensation was made within one year after the death of the employee. Without again quoting the evidence, suffice it to say that there is no substantial evidence in the record that would justify a finding that the employee died on May 20th; on the contrary, it is quite conclusive that he came to his death on May 21st, and that being true the claim was made within a year after his death.

In the second place, it is very forcefully urged by the petition for rehearing that the court erred in holding that a claim for compensation can be sustained against the surety where no claim was made against the employer within the statutory period of one year. It is contended by counsel for the insurance fund that "the contract of the surety is with the principal and no one else" and "that a surety's liability is strictly secondary and cannot exist until there is a primary liability established against the principal." The fallacy of this contention lies in the fact that under the Workmen's Compensation Law the duties and liabilities of a surety are prescribed by statute and the statutory provision becomes a part of every surety bond, whether given by a surety company or the state insurance fund.

Sec. 43–1806, I. C. A., which defines the word "employer," concludes with the following sentence: "If the employer is secured it includes his surety so far as applicable." And sec. 43–1605 authorizes the injured workman or his legal representative to prosecute a separate or independent claim against the surety. It is clear from these provisions of the statute that the contract and obligation of the surety becomes at once a *primary obligation* to the employee and

authorizes the employee to prosecute a claim for compensation against such surety in the same manner and with the same force and effect as he can prosecute it against the original employer, and for the purposes of such action or proceeding the surety becomes a co-"employer." (*United States F. & G. Co. v. Industrial Commission*, 42 Ariz. 422, 26 Pac. (2d) 1012, 1017.) It follows, therefore, that under a contract of insurance entered into with an employer under the Workmen's Compensation Law of this state, the insurer assumes the obligations of an employer to his employees for accident compensation.

We adhere to the conclusions reached in the original opinion filed therein. The petitions are denied.

Givens, C. J., and Budge and Holden, JJ., concur.

MORGAN, J.—I am agreed that the petitions for rehearing should be denied.