(No. 6358.  February 17, 1937.)

C. S. BYBEE, Respondent, v. IDAHO EQUITY EX-
CHANGE and STATE INSURANCE FUND, Appel-
lants.

[65 Pac. (2d) 730.]

Carroll F. Zapp, for Appellants.

Elam & Burke, for Respondent.

BUDGE, J.—This appeal is from a judgment of the district court reversing the findings of fact, rulings of law and award of the Industrial Accident Board wherein compensation was denied claimant C. S. Bybee, respondent herein.

Respondent was engaged in sulphuring peas for appellant Idaho Equity Exchange, that is the spraying or dusting with powdered sulphur fields of growing peas by means of a hand operated blower machine carried by respondent. Respondent was so engaged on the average of nine and one-half hours a day for twenty-seven and one-half days between May 20, 1934, and June 17, 1934, working in a cloud of sulphur dust 80 to 100 per cent pure, inhaling quantities of the dust and usually his person, clothing, face and hands were thickly covered with the dust. While so engaged respondent started experiencing a tightening sensation in his chest, started coughing and would cough hard and throw up phlegm. While so engaged he started losing weight, between the middle of June and July 20th, 1934, dropping from 165 pounds to 129 pounds. Respondent was unable to continue his work during the month of July and August, 1934, and has been totally disabled since July, 1934. Prior to the sulphuring of peas respondent had been in good health.

A claim for compensation was made, appellants denied liability, and a hearing was had before the Industrial Accident

Board, the board finding that respondent was suffering from bronchiectasis, not caused by nor the result of breathing sulphur dust, and that respondent did not sustain a personal injury by accident arising out of or in the course of his employment. The board ordered that claimant take nothing and that his claim for compensation be denied, whereupon an appeal was taken to the district court and the district court made findings of fact and conclusions of law reversing the findings of the board and judgment was entered remanding the cause to the Industrial Accident Board with instructions to enter an award in favor of respondent and this appeal was then taken.

The assignments of error raise but one question, that of whether respondent's disability was due to his inhalation and ingestion of sulphur dust while engaged in sulphuring peas for appellant, Idaho Equity Exchange, the Industrial Accident Board finding that it was not and the district court finding to the contrary. It is appellants' contention that the district court was in error as the findings of the Industrial Accident Board were supported by substantial and competent evidence, and that where there is a conflict in the evidence the findings of the board are conclusive. A determination of the point involved must be derived in the main from the expert testimony of the medical witnesses who testified as to respondent's condition or illness and its cause.

The findings of the Industrial Accident Board, based upon competent and substantial evidence, appear to have largely eliminated the testimony of Dr. West, inasmuch as the board found that respondent was afflicted with diseases other than tuberculosis, Dr. West's diagnosis, during the period of time involved in this action, the board finding as follows:

"That on or about the 12th or 13th day of July, 1934, the claimant called upon a physician, which physician saw him three times in the month of July. . . . . .

"That at the time he visited said physician in the middle of July, the *claimant was suffering with acute bronchial pneumonia.* . . . . .

"That since the middle of August, 1934, and until the holidays of that year, . . . . he was being treated by another physician; that the matter which the claimant coughed up

at that time and which he described as 'sulphur, just like scabs' were tube casts such as form in bronchiectasis; *that at the time* he coughed up said tube casts *he was suffering with bronchiectasis.* . . . .

"That about the 29th day of February, 1935, the claimant called upon the county physician of Canyon County; that said physician had an analysis made of the sputum; that the sputum at that time showed no tuberculosis but showed a streptococcic infection. . . . .

" . . . . that the claimant now is, and ever since the 20th day of August, has been totally disabled for work; *that he now has an irritation of the lungs, especially the left, and a chronic bronchitis; that said condition is the result of an infectious process.* . . . . " (Our italics.)

From the testimony of Dr. West it was his opinion from an examination of X-ray pictures that appellant was suffering at all times with tuberculosis, which diagnosis the Industrial Accident Board did not accept, and which would have the effect of eliminating the testimony of Dr. West to the effect that tuberculosis would not be caused by or affected by the inhalation of sulphur. In addition Dr. West testified:

"I don't know anything about the damage of sulphur to the lungs. . . . . .

"Q. If the bronchi or lungs were not normal and tuberculosis or bronchiectasis or bronchitis existed, would the inhalation of sulphur aggravate tuberculosis or bronchiectasis or bronchitis, in your opinion?

"A. It is possible it might. There is not the normal defense and the normal resistance."

There is no testimony on the part of Dr. West that acute bronchial pneumonia, bronchiectasis, or chronic bronchitis as a result of an infectious process, the ailments with which respondent was suffering according to the findings of the board, could not have been caused by the breathing of sulphur in the work performed by respondent. Rather his testimony is that "It is possible" that the existing bronchiectasis or bronchitis might be aggravated by the inhalation of sulphur.

The testimony of Dr. Belknap, a physician and surgeon who first examined respondent, "the latter part of July or August 1934" on three occasions, stated: "He had bronchial

pneumonia at that time." The more pertinent portion of Dr. Belknap's testimony is as follows:

"Q. Bearing in mind the history of this case as given to you by Mr. Bybee and particularly the amount of time he spent dusting peas with sulphur, in your opinion was there any connection between his condition *when he reported to you* in July or August, 1934, and this work he had been doing dusting peas?

"A. *I thought that was more a coincident.*

"Q. And there was no direct connection between them?

"A. *Not from his acute pneumonia.* . . . .

"A. Sulphur if inhaled into the lungs would cause a slight irritation, like any foreign matter. Make a person cough perhaps. . . . .

"Q. Would the presence of sulphur in the lung have any damaging —— in normal lungs, or normal bronchial tubes?

"A. If you had a lot of strong sulphur, it would irritate the lungs, yes. . . . .

"A. Put a person into a room with a lot of sulphur and it could cause coughing, and the bronchial tubes, since there is an inclination for them to eliminate it, the coughing would throw it off and afterwards there would be an irritation of the lung tissue.

"Q. Is there any possibility of sulphur causing bronchitis?

"A. If a man is at it a long time, it is possible.

"Q. Would it be very common?

"A. I don't thing so. . . . .

"Q. And as to sulphur causing bronchiectasis.

"A. I don't think it would.

"Q. Have you ever heard of a case where it caused any of the three mentioned diseases?

"A. No." (Italics ours.)

It thus appears from the testimony of Dr. Belknap, that the only positive portion of his testimony, if in fact it may be said to be positive in character, is to the effect that in his opinion there was no direct connection between respondent's work dusting peas with sulphur and *"his acute pneumonia"* with which respondent was suffering when he reported to Dr. Belknap in July or August, 1934, and that he "thought it was more a coincident."

Dr. Proctor, a physician and surgeon who had respondent under his care for a period of time from and after February 29, 1935, from physical examinations, a history of the case, and later X-rays, diagnosed respondent's ailment as, first: A "lung abscess" and later as possible "bronchiectasis or a dilitation of the bronchial tubes." A portion of Dr. Proctor's testimony is as follows:

"Q. Have you made any other diagnosis of his condition since that time?

"A. Just this much, that of bronchiectasis, or a dilitation of the bronchial tubes. . . . . It is possible it might be bronchiectasis alone, but it was my opinion it was a lung abscess. . . . .

"A. I never changed it, only that is a possibility it may be bronchiectasis too, a dilitation of the bronchial tubes. . . . .

After a statement of a hypothetical question of some length incorporating facts with reference to respondent's method, manner and length of work, the equipment and ingredients used therein, and a history of respondent's physical condition and reactions, Dr. Proctor was asked and answered:

"Q. What was the cause of his condition in your opinion?

"A. My opinion is that the sulphur, or its impurities, which he used in spraying those peas caused the trouble."

Upon cross-examination Dr. Proctor testified as follows:

"Q. What was the connection in your opinion between the abscess and the sulphur he was supposed to have inhaled?

"A. The sulphur was an irritant that irritated the air passages and set up an inflammation, and it was that cast of the bronchial tube which showed an intense irritation from some cause, and whatever it came from, it led me to think that was the cause of the abscess and also an abscess not infrequently follows pneumonia, it causes a lowered resistance and the lung breaks down. . . . .

"Q. Is it your opinion that the sulphur started the whole trouble in this case?

"A. Yes."

A careful analysis of the record discloses that there is a positive statement on the part of Dr. Proctor that the sulphur which respondent used in spraying peas caused the whole trouble in this case, or respondent's condition. The other

medical witnesses called do not deny, but testified, that the breathing of sulphur dust might cause or aggravate bronchiectasis or bronchitis and that the presence of sulphur dust in the bronchial tubes or lungs would cause irritation and coughing. The rule heretofore announced by this court in *Beaver v. Morrison-Knudsen Co.,* 55 Ida. 275, 289, 41 Pac. (2d) 605, would appear to be applicable herein, namely:

"Positive expert testimony will prevail over negative expert testimony. (*Womack v. New Orleans Public Service, Inc.,* 5 La. App. 71.) The expert testimony on behalf of claimant was of a positive nature, respondents' of a negative, if it be conceded that there is negative testimony on the material issue, namely; Whether the breathing of silica dust rock by the claimant set up an irritation in his lungs and lighted up his tuberculosis."

In this case the evidence, positive in nature, supports the conclusion that respondent's condition was brought about by his work in dusting peas and any evidence, if any there be, to the contrary is negative in character.

██ While the findings of fact of the Industrial Accident Board, when supported by competent evidence, are conclusive on appeal to the district court or to this court, there must be competent and substantial evidence to support the findings of the board, and if such findings and decisions are clearly unsupported as a matter of law, it is within the province of the courts to set aside the findings and decision of the board. In *In re Larson,* 48 Ida. 136, 279 Pac. 1087, this court said:

"As was said in *Ybaibarriaga v. Farmer,* 39 Ida. 361, 368, 228 Pac. 227: 'The well-settled rule that forbids this court to reverse a trial court in cases where the evidence is conflicting but sufficient to sustain a decision applies to the findings of fact made by the industrial accident board in cases of this kind, and is applicable likewise to the district court in reviewing the decisions of said board. . . . . '

"It may well be said, in view of C. S., sec. 6270, and the foregoing authorities as well as possibly others, the courts are limited to review of questions of law, the application of the law to undisputed facts, whether or not the evidence sustains the findings of the board, and are empowered to con-

sider the competency, relevancy and materiality of the evidence, and to determine whether or not there is a substantial conflict in the evidence. There must be competent and substantial evidence to support the findings of the board and the district court, and if such findings and decisions are clearly unsupported as a matter of law, it is within the province of this court to set aside said findings and decision. (*In re Hillhouse Estate*, 46 Ida. 730, 271 Pac. 459.)''

See also: *Burchett v. Anaconda Copper Min. Co.*, 48 Ida. 524, 283 Pac. 515; *In re Hillhouse Estate*, 46 Ida. 730, 271 Pac. 459.

We have reached the conclusion that there is no such conflict in the evidence as to warrant the findings of the board denying respondent compensation nor that the findings of the board must have been upheld by the district court, but we are clearly satisfied that the great weight and preponderance of the evidence supports the findings of the district court, and that there is no substantial evidence to support the findings and decision of the board. The judgment of the district court is therefore affirmed. Costs to respondent.

Ailshie and Givens, JJ., concur.

Morgan, C. J., and Holden, J., concur in the conclusion reached.