245 P.2d 806

KERNAGHAN v. SUNSHINE MINING CO.

No. 7768.

Supreme Court of Idaho.

June 25, 1952.

E. B. Smith and Walter M. Oros, Boise, for appellant.

H. J. Hull & Sons, Wallace, for respondent.

TAYLOR, Justice.

This is a proceeding under the occupational disease compensation law. The appellant claims compensation for total disability due to silicosis. The respondent (employer) is self-insured.

One of the issues tried is the extent to which disability was due to silicosis. §§ 72-1208, 72-1218, 72-1220 I.C. On this the board found:

"* * * It is not shown that tuberculosis of the lungs is a complicating factor.

"The board finds that claimant is totally and permanently disabled for remunerative work, but such disability is not due to silicosis alone. Silicosis is, however, an essential causative factor in his disability. As pointed out by the doctor, claimant's two attacks of pneumonia have already demonstrated his susceptibility to respiratory infection, which susceptibility is a direct result of silicosis.

"But in this claimant's case old age is also a major factor. * * *

"With two major causes of disability, were this a compensable case, the board would apportion a 50% recovery on account of silicosis."

On appeals from the Industrial Accident Board this court is limited to a review of questions of law. Const. art. 5, § 9; §§ 72-608, 72-609 I.C.

■ If the findings of the board are supported by substantial competent evidence they will not be set aside on appeal. § 72–609 I.C.; Walker v. Hogue, 67 Idaho 484, 185 P.2d 708; Stralovich v. Sunshine Mining Co., 68 Idaho 524, 201 P.2d 106.

■ The claimant was 67 years of age and the board observing him on the stand as a witness found that his "mental alertness is also diminished." Old age is a factor which the board may take into consideration in determining the cause of disability. Eagle Indemnity Co. v. Hadley, 70 Ariz. 179, 218 P.2d 488. Claimant's attending physician, Dr. Robert W. Cordwell, gave a detailed account of his diagnosis and treatment of the claimant over the period from February 28, 1949, to March, 1950. From this it appears claimant was suffering from silicosis, grade 2, which standing alone is not generally regarded as totally disabling. While the doctor purported to attribute claimant's disability entirely to silicosis, he, at the same time, testified that he took into consideration other clinical symptoms, including two attacks of pneumonia, the appearance of the man himself, and also his age. The doctor also described two traumatic chest injuries, one sustained in a car accident in which ribs were fractured. However, he did not testify as to whether these injuries were contributing factors to disability.

"The Industrial Accident Board, specializing as it does in the hearing of industrial accident cases, must be pre-sumed by reason of its experience to be able to judge the causative factors in a particular case on both medical and non-medical evidence." Walker v. Hogue, 67 Idaho 484 at page 489, 185 P.2d 708, at page 710.

■ It was for the board to find the cause or causes of disability and to apportion the disability among the factors involved. Its findings, being supported by substantial and competent evidence, are binding upon this court.

The other issue tried is whether claimant had been injuriously exposed to silicosis in respondent's employment within two years immediately preceding his disablement. § 72–1209 I.C. The record shows claimant was employed by the respondent intermittently from 1927 to December 22, 1949. From 1927 to 1936 he worked underground. In 1936 he left respondent's employ and worked underground for the Sunshine Consolidated for fourteen months. He returned to respondent's employ in 1937, where he continued to work mostly underground until January 10, 1941, when he was idled by the accident mentioned until October 4, 1941. From October 7, 1941, to August 25, 1944, he was employed on the surface except for various periods when he was off on account of illness, vacations, or leave. From August 25, 1944, to February 4, 1946, he worked as "pumpman" underground. From February 6, 1946, to the final termination of his employment, December 22, 1949, he was employed on the surface, except that

he was underground one day, May 8, 1947, when he painted a hoist on the 3,100 foot level. In this connection the board found:

"The most probable date of Kernaghan's last hazardous exposure is January 10, 1941, when he last worked underground, other than as a pumpman at a relatively dust-free station. His last underground employment of any character was February 4, 1946.

"The board finds that his surface work since that time did not involve hazardous exposure to silica dust."

On December 22, 1949, while on the job, claimant suffered a chill and was taken to a hospital where Dr. Cordwell diagnosed his condition as pneumonia. He was discharged January 9, 1950, as "better." February 27, 1950, he was again admitted to the hospital suffering pneumonia. On March 2nd the doctor advised that he shouldn't work, that he should be retired.

During the course of his employment on the surface the claimant worked mostly in the shop. At irregular intervals when the employee who regularly cleaned out the dry room was off the job, the claimant was called upon to do that work. This is a room where the underground miners change from work clothes to street clothes, taking off their wet clothes worn underground, hanging them up to dry, taking a shower and putting on their street clothes at the end of each shift; and where the men going on shift take off their street clothes, "beat out"

their then dry work clothes over a bannister prior to putting them on to go into the mine. There is considerable testimony on both sides as to the condition of this room with reference to dust. Considering that claimant was there only occasionally, except for one occasion when he testified he performed that duty five weeks straight; that it was usually less than half a day's work, and consisted of picking up trash off the floor and then washing the room out with water from a hose; it appears that the board's finding is supported within the rule.

Claimant also urges that during this period he was exposed to silica dust in the crushing plant. In connection with his shop work he went to the mill each Monday morning to sort out waste metal or "tramp iron," which could be reclaimed, and which was collected from the ore by the magnetic head pulley where the conveyor delivered the ore to the primary crusher. The scrap was set aside in boxes by the mill crew. This sorting required, as variously stated by claimant, from less than an hour to three hours on each occasion. The testimony is also conflicting considering the conditions in the crushing plant as to silica dust. The evidence on behalf of the respondent shows an elaborate dust removal and collecting system, which it maintained in operation in that plant.

Dr. Paul Ellis, an authority of some note on silicosis, and co-author of a paper on the subject, cited by appellant, testified as to the standard determined and accepted

by the medical profession with respect to the quantity of silica dust that is injurious to persons exposed thereto. This standard he stated to be that inspired air containing not more than five million particles of free silica, below ten microns, per cubic foot is considered safe. That is, air that does not contain a greater concentration of the harmful particles is air in which a man may work for many years without injury. The concentration of free silica in the air is determined by multiplying the total dust count by the percentage of free silica known to be present. The board in its findings accepted this standard as a basis for its determination of what constitutes "hazardous" exposure. It is, of course, the duty of the board to determine what constitutes "injurious exposure". In doing so it may decide what standards it will accept as a guide to its findings upon that issue. Kennecott Copper Corporation v. Ind'l Comm. Utah, 205 P.2d 829. The weighing and evaluating of such evidence is also for the board. Dyre v. Kloepfer and Cahoon, 64 Idaho 612, 134 P.2d 610.

■ Claimant assigns four errors in his attack upon the board's finding that his surface employment did not involve "hazardous" exposure to silica dust. The first is that the board considered evidence produced by the employer of the sampling of the air and the results of dust counts of the samples taken at various places in the crushing plant, at various levels in the mine, and in the dry room, where appellant

had worked. The objection is urged that the conditions are not shown to be the same when the samples were taken as when claimant worked at the various places where the air was sampled. Respondent produced testimony that conditions were substantially the same, and appellant that conditions were not the same. On the whole it appears that conditions were substantially similiar, and that the objections urged by the claimant tend rather to affect the weight of the evidence than its admissibility. The board did not err in admitting it. Kelly v. Troy Laundry Co., 46 Idaho 214, 267 P. 222; 22 C.J. § 852, p. 758; 32 C.J.S., Evidence, § 590, p. 442.

■ Appellant next urges that the board erred in rejecting his offered exhibits 4, 5 and 6, which purport to be minutes of meetings of the Union-Management Safety Committee of the respondent company. These minutes contain references to complaints of dusty conditions existing in the "bucking room" and "rock house." The exhibits were rejected on the ground that they constituted hearsay and secondary evidence. The ruling of the board was correct. It appears from the record that the members of the committee were available as witnesses, and no reason is suggested why secondary or hearsay evidence should be admitted and the opposing party deprived of the right of cross-examination. Appellant, however, urges that, since respondent's safety engineer was a member of this committee, this evidence is admissible to

show knowledge on the part of respondent. Claimant is not required to prove knowledge. The right to recover does not depend upon knowledge or negligence of the employer. There is, therefore, not a sufficient reason for the admission of evidence so clearly incompetent. Lea v. Galbraith, 64 Idaho 724, 137 P.2d 320. Furthermore, if knowledge were an element of appellant's case, the engineer was also available as a witness.

■ The third objection is that the board's finding of want of exposure within two years is based upon the standard adopted by the board. That is, it requires a showing of such exposure as would be injurious to a normal, sound employee, whereas appellant being afflicted with silicosis, grade 2, any exposure which would aggravate his silicotic condition would be an injurious exposure as to him. Appellant cites the following cases which in substance hold that "injurious exposure" or "harmful quantities" (according to the particular statute involved) means such quantity or concentration of silica dust as is injurious or harmful to the individual claimant involved. So, if he has previously acquired silicosis, or other infirmity making him more susceptible to the effects of the dust and his condition is aggravated by what to a normal person would be non-injurious, he is entitled to compensation. Utah Const. Co. v. Berg, 68 Ariz. 285, 205 P.2d 367; Inland Steel Co. v. Voutos, 118 Ind. 335, 77 N. E.2d 126. See also, In re Larson, 48 Idaho 136, 279 P. 1087; Fealka v. Federal Mining & Smelting Co. 53 Idaho 362, 24 P.2d 325; Beaver v. Morrison-Knudsen Co., 55 Idaho 275, 41 P.2d 605, 97 A.L.R. 1399; In re Soran, 57 Idaho 483, 67 P.2d 906; Young v. Herrington, 61 Idaho 183, 99 P.2d 441; Carlson v. Small Leasing Co., 71 Idaho 35, 225 P.2d 469; Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275; Fraga v. State Comp. Com'r, 125 W.Va. 107, 23 S.E.2d 641.

Assuming that this is a correct construction of the statute, we cannot overturn the board's finding in this case on that ground, because the evidence here does not show that his condition was aggravated by the inhalation of silica dust during the period of his surface employment. The evidence in that respect is to the effect that he was suffering silicosis, grade 2, as shown by X-ray films taken April 27, 1939, and that his condition in that respect had not progressed or worsened to the time the last films were taken April 10, 1950. Thus there is competent evidence to support the finding.

■ Lastly, appellant urges that the finding is a want of "hazardous" exposure, whereas the statute requires a showing only of "injurious" exposure. As we stated in Shumaker v. Hunter Lease & Gold Hunter Mines, Idaho, 238 P.2d 425, the finding is not responsive to the statute. Since there may be a difference in the construction of the statute were the word, "hazardous" used instead of "injurious", the finding should be as required by the statute.

However, since, as herein noted, the evidence would support a finding that claimant had not been injuriously exposed within the time required, and the board having denied compensation, the finding will be construed as one against "injurious" exposure.

The order appealed from is affirmed.

No costs allowed.

GIVENS, C. J., and PORTER, THOMAS and KEETON, JJ., concur.