320 P.2d 763

Clarence LARSON, Employee, Claimant-Appellant,

v.

STATE of Idaho, Department of Highways, Employer, and State Insurance Fund, Surety, Defendants-Respondents.

No. 8564.

Supreme Court of Idaho.

Jan. 10, 1958.

Rehearing Denied Feb. 4, 1958.

McFarland & McFarland, Coeur d'Alene, for appellant.

448

Graydon W. Smith, Atty. Gen., Glenn A. Coughlan, Wm. B. Taylor, Asst. Attys. Gen., for respondents.

SMITH, Justice.

Appellant, November 14, 1955, then aged 41 years, received a personal injury caused by an accident arising out of and in the course of his employment with respondent employer, in regard to which event no dispute exists. Respondents recognized liability for and paid certain expenses of medical treatment accorded appellant for contusions sustained in area of the right side of his abdomen and right flank, caused by the accident.

The existing controversy is based upon appellant's assertion, denied by respondents, that a hernia, by which appellant became afflicted, was caused by such accident and for which he made claim for workmen's compensation benefits. He has appealed from an order of the industrial accident board denying recovery on his claim.

Appellant assigns error of the board in finding that the hernia did not appear suddenly and immediately following the accident; that the hernia was not reported to the employer within thirty days, and that the hernia did not result from the accident.

I.C. § 72–316, relating to cases of hernia, reads as follows:

"Hernia.—In all cases of hernia resulting from injury by accident alleged to have been sustained in the course of and resulting from employee's employment, it must be proved:

"1. That it was an injury by accident resulting in hernia

"2. That the hernia appeared suddenly and immediately following the accident.

"3. That the hernia did not exist in any degree prior to the injury by accident for which compensation is claimed.

"4. That the hernia was reported to the employer within thirty days after the accident."

The board found: "It is probable that claimant's hernia did not exist in any degree prior to claimant's accident of November 14, 1955," which meets the requirement of subparagraph 3 of the above quoted section of the statute. The remaining findings of the board, within the purview of subparagraphs 1, 2 and 4 of said section of the statute, regarded in the light of appellant's specifications of error, raise the issues involved in this proceeding.

Since the evidence is undisputed it may be reviewed as a matter of law to determine its sufficiency to sustain the findings. If the findings are clearly unsupported as a matter of law, it is within the province of this court to set them aside and the decision based thereon. Ybaibarriaga v. Farmer, 39 Idaho 361, 228 P. 227;

In re Hillhouse's Estate, 46 Idaho 730, 271 P. 459; Bybee v. Idaho Equity Exchange, 57 Idaho 396, 65 P.2d 730; In re Black, 58 Idaho 803, 80 P.2d 24; Paull v. Preston Theatres Corporation, 63 Idaho 594, 124 P. 2d 562; Aranguena v. Triumph Min. Co., 63 Idaho 769, 126 P.2d 17; Benson v. Jarvis, 64 Idaho 107, 127 P.2d 784; Miller v. Bingham County, 79 Idaho 87, 310 P.2d 1089. A brief review of the evidence follows.

The accident of November 14, 1955, occurred while appellant was unhooking a tow chain attached to a motor grader and a towing vehicle, when an unexpected forward movement of the towing vehicle caused the chain to come loose with a sudden whiplashing motion. The chain lashed around appellant's midsection throwing him to the ground some feet away. He stated, "The wind was knocked out of me and I struggled to get up and Mr. Smith [a co-employee] grabbed on to hold me down in case I had any broken bones. * * * I was in considerable pain. * * * I looked at my stomach and seen it was red and black on my right side."

Dr. Wilson, to whom appellant reported shortly after the accident, described the injury as contusions extending from a point below the lower end of the sternum following underneath the rib margin into the right flank area, which caused appellant a great deal of soreness. The doctor did not then or thereafter examine appellant for hernia.

November 16, 1955, appellant made due claim for compensation; in the claim, after describing how the accident happened, he stated the nature of his injury to be, "right side and back badly bruised." The employer's district engineer, who executed the report of the employer appended to the claim, certified that appellant was employed by the employer on the date of the accident, November 14, 1955, and had been so employed since 1947.

November 16, 1955, appellant complained of cramps after eating, and on November 19, 1955, he still experienced soreness in the area injured. Treatment included "pain killing" tablets. The attending physician released appellant to return to work on November 21, 1955. Appellant's work with the employer terminated February 6, 1956.

February 7, 1956, appellant complained to Dr. Wilson of sudden pain in the upper portion of his shoulders, but did not receive any treatment therefor. He thought he had the "flu". He did not attribute the pain to lifting a sanding machine the day previous.

A few days prior to February 23, 1956, appellant applied for work with another employer. His pre-employment physical examination revealed him to be afflicted with a right inguinal hernia. February 24, 1956, he told Dr. Wilson of the discovery of the hernia, wondering if it was related to the accident of November 14,

1955. Dr. Wilson doubted such relationship, stating however that he did not tell appellant at any time that the hernia was not the result of that accident.

Appellant then reported to Dr. Shrum, who verified the fact that appellant was afflicted with a right inguinal hernia, with some swelling in the area of the right groin. The doctor advised immediate surgery because of imminence of strangulation.

Appellant testified that he suffered considerable pain in his right side and right flank area and that he had a dragging sensation of pain in the right side of his abdomen right after the accident, which he suffered intermittently; tablets administered him by the doctor relieved the pain. After returning to work he noticed this dragging sensation after having worked and when tired. He did not realize that he had a hernia until the pre-employment physical examination had during February, 1956. While the doctors at that time told him that he had some swelling in the area of his right groin, he had not particularly noticed it. A report of a medical examination made of claimant November 5, 1954, on his application for life insurance, admitted in evidence, shows that appellant was not then afflicted with any hernia or rupture. Appellant testified that he had no accident from the time of that examination until the accident of November 14, 1955, and that he had no accident thereafter.

Claimant told Mr. Nash, agent of his former employer, of the discovery of the hernia. Mr. Nash testified of his telling appellant that regardless of whether the hernia was compensable he should have it repaired, because it was a matter of emergency; he stated that the employer "don't recommend any particular physician."

Dr. Shrum, upon operating February 29, 1956, found that appellant suffered a large, right, direct inguinal hernia, which he repaired. In reference thereto Dr. Shrum's testimony appears:

"A. It was a direct hernia.

"Q. Would you explain the difference between a direct and an indirect hernia? A. Well, the indirect hernia, which is the most common type, comes through the layers of the abdominal wall in an oblique fashion, and the direct hernia comes straight through and comes through more medially through the midline and comes through an area which they call Hesselbach's Triangle. Generally the direct hernia is found in the older age group, beyond fifty, whereas the indirect is found in the younger men * * *.

"Q. When a direct hernia is found in a man of the age of claimant [41 years], * * * does that indicate anything to you as to the cause? A. Since the direct hernia is rare in a younger person, you try to look for some cause * * *

452

"Q. Is it usually caused by accident? A. I believe it is, yes."

The doctor stated that he found nothing to indicate that the hernia was of long standing, such as scar tissue. With reference to the dragging sensation which appellant experienced, the doctor testified:

"Q. Doctor, of what significance is the dragging pain complained of by claimant?

  *    *    *    *    *    *

"A. That is a symptom we frequently find with inguinal hernia. Q. Is that a symptom that would appear after the hernia appeared? A. Yes."

■ Since Dr. Wilson at no time examined claimant for a hernia, his testimony, hereinbefore referred to, on the question of causal connection is of no probative value, and is entirely insufficient upon which to base any finding.

■ The undisputed evidence shows that the hernia did not exist prior to the accident of November 14, 1955; also, the accident of that date points without contradiction to the hernia as an injury which appellant thereby received. The symptomotology to which appellant testified points to the occurrence of the hernia as one of the results of the accident, as an injury then received; also, Dr. Shrum's testimony undisputedly points to the traumatism as the causative factor of the hernia. Clearly the requirements of subparagraphs 1 and 2 of I.C. § 72–316 that said accident resulted in the hernia and that the hernia then appeared suddenly and immediately, are fully met by the undisputed evidence.

■ Subparagraph 4 of I.C. § 72–316, to the effect that a hernia must be reported to the employer within 30 days after the accident, constitutes a requirement that *the injury* by accident resulting in the hernia must be so reported in order to be compensable. The referred to mandate of the statute is shown to have been observed in the case here. This is true simply because appellant's employer had knowledge of the accident November 14, 1955, immediately upon its occurrence, which caused appellant to suffer injuries, and the hernia was an injury by him so received. Whatever knowledge appellant then had, so did his employer within the 30-day statutory requirement.

■ The statutory provision that "the notice to or knowledge of the occurrence of the injury on the part of the employer shall be deemed notice or knowledge, as the case may be, on the part of the surety," is included among those provisions which must be read into all contracts of workmen's compensation insurance. I.C. § 72–806. "'Employer' * * * includes his surety so far as applicable." I.C. § 72–1010. See also Smith v. McHan Hardware Co., 56 Idaho 43, 48 P.2d 1102; In re Cain, 64 Idaho 389, 133 P.2d 723, and authorities therein cited.

In Page v. State Insurance Fund, 53 Idaho 177, 22 P.2d 681, 682, the claimant, December 4, 1931, upon striking her right groin against a corner of the table, felt severe pain in that area. The next day she notified her immediate superior of the accident and injury. She was unable to work four days during the period December 6–23, 1931. On the latter date she was laid off work. During most of January, 1932, she was confined to her bed on account of her condition attributable to the accident, and February 7, 1932, two months and three days after the accident, she consulted a physician who found her to be afflicted with a right direct inguinal hernia. March 12, 1932, she filed a claim for compensation and thereupon obtained an award. The evidence showed that claimant was unaware that she was suffering from a hernia until her physician so advised her February 7, 1953. This Court in affirming the award of the industrial accident board stated:

"Respondent testified that she did not know that she was suffering from hernia until so advised by her physician on February 7, 1932. The evidence conclusively shows, as hereinafter pointed out, that the employer had actual knowledge through its agent of the accident and injury and respondent's condition the day following the accident, although respondent did not specifically state, in so many words, that as a result of the accident she was suffering from hernia. The reason she did not so state was that she did not know at that time nor until she was so informed by her physician. She gave the agent or representative of her employer all of the information concerning her injury. Notice of a physical injury carries with it notice of all things which may be reasonably anticipated to result from it. Bates & Rogers Const. Co. v. Emmons, 205 Ky. 21, 265 S.W. 447, 448. The requirement of the report necessarily implies knowledge of the injury for which claim is made. It was impossible in this case for respondent to report to the employer that the injury from which she was suffering was known as hernia until she knew that such injuries were so denominated, and this she first learned from her physician, on February 7, who diagnosed it as such. She reported the accident and her physical condition to the agent of the employer the day following the accident. Such condition was afterwards diagnosed as hernia. The employer was possessed of the same knowledge as respondent and was in a position to make a diagnosis as well as respondent was, and the mere fact that she had not reported the hernia, by so designating it, when in truth and in fact it was such, does not justify refusing compensation on that ground."

In Hancock v. Troy-Parisian Co., 60 Idaho 576, 94 P.2d 674, the claimant, Oc-

454

tober 4, 1938, as a result of a slipping accident, felt pain in her right side which she reported shortly to her immediate superior. At home that evening she was "puffed up" at the place where she had felt the pain in her right side. October 22, 1938, she quit her work. January 9, 1939, three months and five days after the accident, a physician repaired a ventral hernia in her right abdominal wall. She obtained compensation pursuant to her claim therefor filed February 23, 1939. This court upheld the award since the undisputed evidence pointed to the hernia, as later diagnosed and operated, as the result of the accident; also showed that the claimant had not previously experienced pain in her right side; that she reported the hernia within thirty days after the accident to her employer in that, while she did not tell him she had suffered a hernia, she did give him all the information she had, thereby meeting the requirement of the statute, now I.C. § 72–316, that the hernia be reported to the employer within such thirty-day period.

In Smith v. Mercy Hospital, 60 Idaho 674, 95 P.2d 580, 582, the claimant, April 22, 1938, as the result of an accident felt a sudden pain in his left groin. The following day he reported the incident to his immediate superior. He continued working, with some discomfort in the left groin. July 18, 1938, almost three months after the accident he visited a physician who repaired an incomplete, indirect left inguinal hernia. Claimant made claim for compensation benefits August 10, 1938, and pursuant thereto obtained an award. There, as here, the employer and surety contended that the hernia was not reported within thirty days after the accident. This Court said:

"Little merit appears in appellant's contention that the board failed to find 'that the hernia was reported to the employer within thirty days after the accident.' The board did find 'that the employer received notice of the injury within thirty days after the happening thereof.' The salutary purpose of the provision of section 43–1116, I.C.A. [now I.C. § 72–316], providing for notice to the employer is that the employer be timely advised of the employee's condition, its cause and the time thereof, *rather than a specific use of the words contained in the statute* and such has been the interpretation of subdivision 4 of section 43–1116, I.C.A. [now subdivision 4 of I.C. § 72–316]." Citing and quoting from Page v. State Insurance Fund, supra. (Emphasis supplied.)

We therefore are constrained to hold that appellant complied with subparagraph 4 of I.C. § 72–316.

■ Appellant assigns further error of the board in finding that the repair of the hernia was without authorization of respondents, employer and surety. Such assignment has merit. The evidence shows that the employer in nowise attempted to

direct or control appellant's choice of a physician; also that appellant tried to get in touch with the representative of the employer's surety, but could not, due to absence of the representative; also that Dr. Shrum deemed operative procedure to be an emergency, and that the employer's representative was fully cognizant of such circumstance.

Moreover, if the employer fails to provide reasonable medical and similar services to the injured employee, the latter may do so at the employer's expense. I.C. § 72–307.

The order of the industrial accident board is reversed and the cause remanded to the board with instructions to enter an award of compensation benefits in favor of appellant. Costs to appellant.

PORTER and McQUADE, JJ., concur.

TAYLOR, Justice, with whom KEETON, Chief Justice, concurs (dissenting).

I am impelled to dissent by my conviction that the majority opinion not only destroys precedents existing from statehood, but it assumes and arrogates to this court functions and powers denied to it by the constitution.

The mere assertion by the majority that the evidence is undisputed does not make it so. It must be assumed that the statement in the majority opinion that the evidence is undisputed means that it is not contradictory and is without substantial conflict. Otherwise, the second premise, that it presents a question of law within this court's jurisdiction, would be wholly false.

It is demonstrable beyond cavil that the evidence as to whether the hernia resulted from the accident, and whether the hernia appeared suddenly and immediately following the accident, is contradictory and conflicting, and that the findings of the board on these issues are supported by substantial and competent evidence. Further, in my opinion, the evidence on the issue as to whether the hernia appeared suddenly and immediately following the accident, overwhelmingly supports the finding of the board that it did not so appear.

The only evidence, supporting an inference that the hernia resulted from the accident and appeared suddenly and immediately following the accident, is the testimony of the claimant that he felt "a dragging pain in the right side of the abdomen * * immediately after the accident * * * and later I felt the dragging pain in my right side and back"; and that he could not recall any accident that caused any strain or pain between the time of the accident and the discovery of the hernia.

It is to be noted he did not say that this dragging pain occurred in the groin area where the hernia was later found. If his testimony could be regarded as referring to the groin area, then he was impeached by

Dr. Wilson. The doctor testified that on February 24th, when claimant called upon him, claimant stated he was unaware of the hernia "and had had no trouble in this region before the physical examination." Dr. Wilson also testified that on that occasion he told claimant he doubted that the hernia was related to the injury of November 14th. Dr. Wilson was the attending physician who examined and treated the claimant on November 14th, 16th and 19th. He testified as to the contusions, discoloration and soreness immediately below the right floating rib, right flank and back. This is the area he examined, and the same area in which claimant later testified the dragging pain occurred. He did not on that occasion examine the groin and testified claimant made no complaint of any pain or discomfort in the groin area. In this the claimant corroborates the doctor. Claimant testified he did not tell the doctor, or complain to him, of pain in the groin.

The only other doctor who testified was Dr. Shrum, who operated upon claimant and repaired the hernia. In answer to a hypothetical question, in which the accident was described to him, Dr. Shrum answered, "That could have been enough to cause the hernia." In other words, it was a possible cause. This answer was stricken on the objection that the question did not include the incident of the claimant lifting the sanding machine on February 6th, and the fact that he made no complaint of pain or discomfort in the inguinal area. The hypothetical question was not pursued further, except by reference. Dr. Shrum testified further:

"Q. And in view of the facts related, would you have an opinion as to the hernia, whether or not the hernia appeared suddenly and immediately following the accident? A. No, because I didn't see him following the accident.

"Q. In view of those facts would you have an opinion as to whether or not the hernia existed in any degree prior to the accident in November? A. No opinion."

It is without dispute in the record that claimant went back to work on November 21st and continued in the same employment up to and including February 6th. It is also undisputed that he had never at any time, from the date of the accident made any complaint to anyone of pain or discomfort in the inguinal area where the hernia occurred. Dr. Shrum's testimony on this was, "He told me that he had had some discomfort in his lower abdomen." Whether the doctor meant to refer to the groin area is not clear. His answer could as well refer to the area beneath the ribs, right flank and back, the same area where claimant testified the pain occurred.

The doctor's testimony that the hernia was probably due to the claimant's straining

against the man holding him down at the time of the accident, was based upon what the claimant told him as to the pain. If he told Dr. Shrum it was in the groin area, then he made a contradictory statement to Dr. Wilson the next day, and he likewise failed to support the making of any such statement to Dr. Shrum in his testimony before the board. Consequently, there is to this day no evidence of any complaint of pain or discomfort in the groin area. Yet, over three months after the accident, with an intervening work period, and without any warning to the claimant himself—he was unaware of it—a hernia is "discovered", so complete and swollen that it presented a danger of strangulation and a need of immediate emergency surgery. And the doctor testified it was not of long standing.

Thus, the record is almost devoid of any substantial evidence to support a finding that the hernia appeared suddenly and immediately following the accident. Such a finding by the board, on this record, would have been of very doubtful validity. A finding of that essential fact by this court, upon such a record, is a finding against the overwhelming weight of contradictory and conflicting evidence, and contradictory and conflicting inferences arising therefrom. In view of the constitutional provision limiting the jurisdiction of this court to a review of questions of law, the finding of these facts by this court by the process of weighing of conflicting and contradictory evidence and inferences, and basing its decision thereon, is no less than startling.

From territorial days this court has followed the rule that findings of fact made by a court, jury, or other fact-finding tribunal, based upon substantial, competent, though conflicting evidence, will not be disturbed on appeal. But, in the case of an appeal from the industrial accident board, the constitution commands this court to confine itself to a review of questions of law. Art. 5, § 9, Constitution. Moreover, this court has quite consistently obeyed that constitutional limitation.

It is perfectly obvious, from a recital of the facts contained in the majority opinion, and in this dissent, that the evidence, particularly on the issue as to whether the hernia appeared suddenly and immediately following the accident, is not undisputed, but, on the contrary, is contradictory and conflicting, and that there is competent and substantial evidence supporting the board's finding. Consequently, no question of law on that issue is presented. The finding of the board thereon is conclusive, and beyond the authority of this court to alter.

The governing rules were most recently stated by the author of the majority opinion as follows:

"Idaho Constitution, Art. V, sec. 9, and I.C. sec. 72–609 limit the jurisdiction of the Supreme Court on appeals from the Industrial Accident Board to

a review of questions of law only. (Citations.)

"It is only in cases where the evidence is not conflicting and not in dispute, that the application of the law to the undisputed facts raises a question of law. (Citations.) Also, where the findings are absolutely unsupported, they may be reviewed as a matter of law. (Citations.)

"The findings of the Industrial Accident Board, when supported by competent, substantial though conflicting evidence will not be disturbed on appeal. (Citations.)" Miller v. Bingham County, 79 Idaho 87, 310 P.2d 1089. at page 1095.

Some of the previous decisions of this court supporting those rules were there collected and cited by Justice Smith.

"Furthermore, it is the duty of the Board, and not the court to make findings of fact and rulings of law (Citations). On appeal from orders of the Industrial Accident Board, this court can review only questions of law. (Citations.) We can neither weigh the evidence nor make findings of fact." Dyre v. Kloepfer and Cahoon, 64 Idaho 612, at page 617, 134 P.2d 610, at page 613.

"The Industrial Accident Board is the arbiter of disputed and conflicting facts and opinions of experts, and its determination—when substantially supported—may not be disturbed by this Court." Oliver v. Potlatch Forests, 73 Idaho 45, at page 49, 245 P.2d 775, at page 777.

" * * * The weighing and evaluating of such evidence is also for the board." Kernaghan v. Sunshine Mining Co., 73 Idaho 106, at page 111, 245 P.2d 806, at page 809.

" * * * Our quest goes only to the extent of determining whether or not there is competent and substantial evidence to support the findings of the board. Beyond that we may not go. Constitution, Art. 5, § 9; §§ 72–608 and 72–609 I.C. As we have so often stated, it is a question of law for the court to determine whether or not the findings of the industrial accident board are 'based on any substantial, competent evidence'. And if an examination of the record reveals that the board's findings are supported by substantial and competent evidence, such findings will not be disturbed by this court. (Citations.)" Smith v. Potlatch Forests, 74 Idaho 470, at page 472, 264 P.2d 684, at page 685.

In Yanzick v. Sunset Minerals, 75 Idaho 384, at page 388, 272 P.2d 696, at page 698, Justice Porter stated the rule as follows:

"On an appeal from an order of the Industrial Accident Board, we are lim-

ited to a review of questions of law. Article 5, § 9, Idaho Constitution; Section 72–608 I.C. We can only consider the evidence to determine whether or not there is competent and substantial evidence to support the board's findings of fact."

Not only does the majority weigh the conflicting evidence and make its own finding that the hernia appeared suddenly and immediately following the accident, against the clear weight of such evidence, but it also undertakes to determine the weight and probative value of the testimony of Dr. Wilson. Can there be any question that that is the prerogative and function of the fact-finding tribunal, and not a question of law for this court?

As a precedent, the opinion in this case stands for the proposition that in cases of appeal from the industrial accident board, where the evidence as to essential facts is conflicting, this court, without seeing or hearing the witnesses, will examine and weigh such evidence and the inferences to be drawn therefrom and, in case it disagrees with the findings made by the board, will set those findings aside and make its own contrary findings from the cold record, even though the weight of competent and substantial evidence sustains the findings of the board; all in disregard of the constitutional denial of its jurisdiction so to do.

The order of the board should be affirmed.